# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 18-41768-PWB |
| THE FAIRBANKS COMPANY, | ) |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |

## NOTICE OF HEARING ON
## MOTION OF THE UNITED STATES TRUSTEE TO
## APPOINT A LEGAL REPRESENTATIVE
## FOR FUTURE ASBESTOS CLAIMANTS

**PLEASE TAKE NOTICE** that the United States Trustee filed a motion for an order appointing a legal representative for the future asbestos claimants of The Fairbanks Company pursuant to 11 U.S.C. § 524(g)(4)(B)(i) (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion in **Courtroom 1401, U.S. Courthouse, Richard B. Russell Building, 75 Ted Turner Dr., SW, Atlanta, GA 30303 at 10:00 a.m. on January 15, 2019.**

Your rights may be affected by the court's ruling on this motion. You should read this motion carefully and discuss it with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in this motion or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the motion with the Clerk at the address stated below, but you are not required to do so. If you file a written

1

response, you must attach a certificate stating when, how and on whom (including

addresses) you served the response.  Mail or deliver your response so that it is

received by the Clerk at least two business days before the hearing.  **The address

of the Clerk's Office is: U.S. Courthouse, 600 East First St, Room 339, Rome,

GA 30161-3187.** You must also mail a copy of your response to the undersigned.

Dated:  December 31, 2018

DANIEL M. MCDERMOTT,
UNITED STATES TRUSTEE, REGION 21

*s/ Martin P. Ochs*
MARTIN P. OCHS
NY Bar No. MO-1203
GA Bar No. 091608
United States Department of Justice
Office of the United States Trustee
362 Richard B. Russell Building
75 Ted Turner Drive
Atlanta, Georgia  30303
(404) 331-4437
martin.p.ochs@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| THE FAIRBANKS COMPANY, | ) Case No. 18-41768-PWB |
|  | ) |
| Debtor. | ) |
|  | ) |
|  | ) |

**MOTION OF THE UNITED STATES TRUSTEE**
**TO APPOINT A**
**LEGAL REPRESENTATIVE**
**FOR FUTURE ASBESTOS CLAIMANTS**

The United States Trustee, by his undersigned counsel, moves the Court for an order appointing a legal representative for the future asbestos claimants ("FCR") of The Fairbanks Company (the "Debtor") pursuant to 11 U.S.C. § 524(g)(4)(B)(i) (the "Motion").

Appointment of an FCR is an important and appropriate form of relief in a chapter 11 case involving significant asbestos liabilities, and the Court—and no one else—has the statutory authority to make the appointment. The absence of any statutory role for the debtor or present claimants in the selection of the FCR confirms that it is a highly sensitive role that requires complete independence. For this reason, and in order to ensure that the Court is able to choose from the broadest and best possible pool of candidates, the United States Trustee is soliciting the parties in interest for candidate recommendations and is in the process of independently identifying potential candidates who have distinguished backgrounds in serving as fiduciaries or similar positions of trust. Once this

3

process is complete, the United States Trustee proposes to submit one or more
candidates for the Court's consideration and provide information about each
candidate to assist the Court in making its appointment of a truly independent
FCR.

## BACKGROUND

1.     The Debtor previously filed two motions seeking appointment of an
FCR in this case.  On August 10, 2018, the Debtor filed a motion for an order
appointing Lawrence Fitzpatrick as FCR.  (Dkt. 33).  Notwithstanding that his own
appointment had not yet been approved, Mr. Fitzpatrick sought court approval to
retain two law firms, including Young, Conaway Stargatt & Taylor, LLP
("YCST").  (Dkt. 38).  Mr. Fitzpatrick withdrew both law firm applications on
August 15, 2018.   On November 20, the Debtor withdrew the motion for
appointment of Mr. Fitzpatrick and filed a motion to appoint James Patton, the
chairman of the YCST firm, as the FCR.

2.     The United States Trustee objected to Mr. Patton's appointment for a
variety of reasons, including questions about his ability to be an independent and
effective FCR when he was hand-picked by the adversaries of the FCR's
constituency and who has a long history as an insider of a closed circle of
professionals who have controlled virtually every asbestos case since section
524(g) was enacted in 1994.  (Dkt. 133).  Indeed, this Court appeared to recognize
that "there's an inherent conflict between the current claimant[s] and the future
claimant[s]."   Status Conference Transcript, p. 12 (12/18/18) ("Tr.").  With a few
exceptions, the list of cases in which Mr. Patton and YCST have participated
appears to include nearly every major asbestos-related chapter 11 bankruptcy case
filed within the last 20 years, most of which were notable for the absence of anti-

4

fraud protections and of safeguards against mismanagement and inflated professional fees built into the trusts. *See* footnote 3, *infra*, p. 12.

3.     After the United States Trustee objected to Mr. Patton's appointment, Debtors requested that the Court convene a status conference instead of a hearing on December 18 to discuss process and scheduling. When the United States Trustee proposed opening up the selection process and shifting the paradigm away from decades of established practice, the Court stated that "I understand it. I see the problems with the current way that it's done. I'm prepared to have a different way to do it . . . ." Tr., p. 26. The Court further directed that the United States Trustee should identify and propose candidates: "I'm not [going to] try to find a future claimants representative. So if the U.S. Trustee thinks that there should be somebody other than Mr. Patton you need to find somebody and suggest them." Tr., p. 13.

4.     No disclosure statement or plan of reorganization has been filed.

## DISCUSSION

### A.     The Critical Role of the FCR in Asbestos Bankruptcy Cases

5.     As the Debtor has acknowledged, a principal objective of the eventual plan will be to resolve the Debtor's historic and future asbestos liabilities, which may be accomplished through an injunction under section 524(g) of the Bankruptcy Code. The FCR will play a critical role in this process. In contrast to a traditional chapter 11 case, where current creditors and equity holders are the only parties whose rights will be directly affected, a case that seeks an asbestos channeling injunction under 11 U.S.C. § 524(g) will also affect the rights of future asbestos victims who have not yet manifested harm from the Debtor's products and

who may not even be aware of these bankruptcy cases.  For those victims—who may not show signs of illness for years or even decades after the plan is confirmed—the section 524(g) injunction will cut off any right they may have to recover against the reorganized debtor, the debtor's insurers, and certain related parties and will force them to look exclusively to a post-bankruptcy trust for compensation.  *See In re Federal-Mogul Global Inc.*, 684 F.3d 355, 357 (3rd Cir. 2012) (section 524(g) injunction "channel[s] all current and future claims based on a debtor's asbestos liability to a personal injury trust").

6.    To protect the due process rights of these future claimants and to ensure that they would receive effective and independent representation, Congress created the position of FCR—a unique type of bankruptcy fiduciary that exists only in chapter 11 asbestos cases involving a section 524(g) injunction.  *See* 11 U.S.C. § 524(g)(4)(B)(i).  Although the Bankruptcy Code does not specify any particular duties for the FCR, the FCR will typically participate in the negotiation of the plan of reorganization and may object to any plan that is unfair to future claimants.  The FCR is not a mere adjunct to the debtor or to the committee of present asbestos claimants.  Rather, the FCR is expected to represent interests that are equally adverse both to the debtor and to all current asbestos claimants.  *See In re Amatex Corp.*, 755 F.2d 1034, 1043 (3d Cir. 1985) ("[B]ecause of the adverse interests of the other parties, it would appear that future claimants require their own representative").

7.    The debtor (and its insurers), present claimants, and the FCR may also have conflicting interests regarding the appropriate level of safeguards against invalid or fraudulent claims.  Once the plan is confirmed and the trust is funded, the debtor and its insurers are usually indifferent to how the trust funds are distributed: it should make no difference to them what proportion of those funds

6

are paid to meritorious claimants, to fraudulent claimants, or for trust expenses and administration, since the injunction ensures that their own liability will in no way be affected. *See Pittsburgh Corning Corp.*, 308 B.R. 716, 727 (Bankr. W.D. Pa. 2004). So long as there is no threat that the fund will be exhausted before their own claims can be paid, first-in-line present claimants may also be indifferent to whether fraudulent claims are being allowed along with their own—but they may object to an overly vigilant claims review process that would delay or reduce their own distributions. By contrast, future claimants have a vital interest in ensuring that the plan contains strong protections against fraud and mismanagement because unchecked payment of non-meritorious claims could well exhaust the trust before some valid future claims can be paid, and they therefore bear a disproportionate share of the harm if the trust is depleted through fraud or mismanagement.

**B.      The Court's Role in Selecting an Independent and Effective FCR**

8.      The FCR differs from most other bankruptcy fiduciaries in that instead of being selected by the debtor (for a professional representing the estate) or the United States Trustee (for a trustee or examiner), the FCR is selected and appointed directly by the Court. *See* 11 U.S.C. § 524(g)(4)(B)(i) (stating that "the court appoints" the FCR). Although parties are certainly free to suggest candidates, nothing in section 524(g) requires the Court to be bound by or defer to their preferences. Nevertheless, as an independent watchdog with no economic stake in the matter, the United States Trustee is uniquely positioned among all the parties in interest to recommend independent candidates for the Court's consideration.

9.      Like other fiduciaries in the bankruptcy process, any person the Court appoints as FCR should be free from conflict, held to the highest possible standard

7

of independence, and be a rigorous and effective advocate for his or her constituency.  Importantly, when enacting section 524(g), Congress did not write on a blank slate.  The FCR mechanism of section 524(g) was closely modeled on two earlier asbestos bankruptcy cases, *In re Johns-Manville Corp.*, 68 B.R. 618 (Bankr. S.D.N.Y. 1986), and *In re UNR Industries, Inc.*, 46 B.R. 671 (Bankr. N.D. Ill. 1985), in which the courts had appointed similar fiduciaries to protect the rights of future claimants.  *See* H.R. Rep. No. 103-835 at 41, *reprinted in* 1994 U.S.C.C.A.N. 3340, 3348.  Those courts, in turn, expressly based the asbestos FCR on various well-established models for fiduciaries representing absent parties. *Manville* determined that there were three possible models for the proposed FCR: (i) the guardian ad litem, (ii) the court-appointed amicus curiae on behalf of an absent party, and (iii) the section 1104 examiner.  *See Manville*, 36 B.R. at 758 n.7; *UNR*, 46 B.R. at 675 (stating agreement with *Manville*).  Notably, in each of these models the fiduciary is required to be completely independent of adverse parties and is subject to a stringent duty of undivided loyalty and disinterestedness.  *See, e.g., Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir. 1986) (guardian ad litem owes "undivided loyalty" to minor); *United States v. Michigan*, 940 F.2d 143, 164–65 (6th Cir. 1991) (orthodox view of amicus curiae "was, and is, that of an impartial friend of the court"); *In re Big Rivers Elec. Corp.*, 355 F.3d 415, 433 (6th Cir. 2004) (section 1104 examiner may not "in the slightest degree  . . . have some interest or relationship that would color the independent and impartial attitude required by the Code").[1]

---

[1] The subsequent history of *Manville* does not make clear which of these models was ultimately used, except insofar as the FCR's powers were later described as "nonbinding."  *See In re Johns-Manville Corp.*, 52 B.R. 940, 943 (S.D.N.Y. 1985); *G-I Holdings, Inc. v. Bennet (In re G-I Holdings, Inc.)*, 328 B.R. 691, 698 (D.N.J. 2005)

10.    The requirement for a fully disinterested FCR with undivided loyalty can also be inferred from the function and purpose of section 524(g).  Because nearly all asbestos plans depend on the ability to channel future as well as present claims, section 524(g) would be meaningless without the ability to bind unknown future claimants.  But any such alteration of the rights of future litigants must be consistent with constitutional due process.  *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 234 n.45 (3d Cir. 2004) (noting that statutory requirements of section 524(g) are "specifically tailored to protect the due process rights of future claimants").  In similar circumstances, courts have recognized that due process not only requires that the absent litigants be effectively represented, but that their representative be free from conflicting duties to other parties.  *Id.* at 245 (noting that future claimants "must be adequately represented throughout the process"); *In re Johns-Manville Corp.*, 551 B.R. 104, 114 (S.D.N.Y. 2016) (trust mechanism that did not provide future claimants with adequate representation would not satisfy due process).  As a result, it is not enough under section 524(g) for this Court simply to appoint an FCR; the Court must also determine that the FCR will provide representation that is effective, disinterested, and independent.

11.    Despite the clear purpose of section 524(g), not all courts have required a high degree of independence from the FCR, and in some cases, courts have approved an FCR who was handpicked by his adversaries.  *See, e.g., In re Duro Dyne Nat'l Corp.,* No. 18-27963 (Bankr. D.N.J. Oct. 16, 2018) (ruling that appointment of FCR selected by debtors and ad hoc committee of present claimants would be approved unless objectors proved that nominee was

---

(discussing *Manville*).  For purposes of the present discussion, it is sufficient to note that all three of the models considered in *Manville* require a similarly high level of disinterestedness and independence.

"disqualified" within the meaning of 11 U.S.C. § 101(14)).  But this approach, which creates a powerful incentive for debtors and present claimants to nominate FCR candidates who are unlikely to litigate vigorously against them, has had generally poor results for the future claimants.  As several studies have pointed out, future claimants have not fared well in asbestos trusts: "[A]lthough trusts are established on the promise to pay all current and future victims equitably, this promise has already been broken at all but a few trusts.  The threat to future victims has become pressing given the dramatic growth of the bankruptcy trust system."  S. Todd Brown, *How Long is Forever This Time?  The Broken Promise of Bankruptcy Trusts*, 61 BUFF. L. REV. 537, 538-39 (2013).

> The bankruptcy trust system is long past the point where participants can look at the rapid depletion of newly established trusts as unanticipated and unintended consequences of generous compensation criteria. . . . If we can be reasonably assured of anything, it is that a trust that employs the same criteria and follows the same practices as its predecessors is extremely unlikely to "value, and be in a financial position to pay, present claims and future demands that involve similar claims in substantially the same manner" as required by section 524(g).

*Id*.

12.    According to one more recent study, between 2008 and 2018, 60% of asbestos trusts were forced to reduce their "payment percentages," which is the mechanism that determines the actual payment that a claimant with a particular disease or settlement will receive.  *See* Peter Kelso and Marc Scarcella, *Dubious Distribution: Asbestos Bankruptcy Trust Assets and Compensation*, U.S. Chamber of Commerce, March 2018, at 9.[2]  For those trusts, an asbestos claim today is

---

[2] Available at https://www.instituteforlegalreform.com/research/dubious-distribution-asbestos-bankruptcy-trust-assets-and-compensation.

worth, on average, 46% less than it would have been worth a decade earlier.  *Id.*
This erosion of trust assets—which disproportionately prejudices future
claimants—is the precise harm that the FCR was meant to prevent.

13.     And far from providing the strong and independent voice that
Congress intended, in many bankruptcy cases these FCRs have done little to
challenge plans that unfairly favored present claimants and defendants (debtors and
their insurers) at the expense of future claimants.  *See, e.g., In re ACandS, Inc.,* 311
B.R. 36, 43 (Bankr. D. Del. 2004) (denying, as fundamentally unfair, approval of
pre-packaged asbestos plan whose terms reflected "unbridled dominance" of
certain present claimants' attorneys whose clients were paid in full at the expense
of other creditors, including future claimants).  Notably, in *ACandS*—a case in
which YCST represented the FCR—the FCR not only failed to object to the plan
provisions that the bankruptcy court criticized as unfair to future claimants (among
other disfavored parties), but he even joined the debtors and the present claimants'
committee in appealing the bankruptcy court's ruling.  *See ACandS Inc. v.
Travelers Casualty*, No. 04-cv-00123-JJF (D. Del.).

14.     The need for a truly independent and effective FCR is especially
pertinent in light of recent court findings of impropriety in the asbestos claims
process.  *See In re Garlock Sealing Technologies, LLC*, 504 B.R. 71, 86 (Bankr.
W.D.N.C. 2014) (finding "startling pattern of misrepresentation" in sample of
asbestos claims).  Because future claimants are the parties who will be most
directly harmed by payment of fraudulent or invalid present claims, the FCR
should play a leading role in investigating present claims and in ensuring that the
plan contains sufficient safeguards to ensure that only meritorious claims will be
paid and that professional fees and costs will be controlled.  But it is difficult to
imagine how this function can be performed by an FCR who is subject to conflicts

11

of interest and divided loyalties, particularly where those conflicts involve the very same law firms he should be investigating or against whom he should be negotiating.

15.    From this perspective, there is little question that the practice of appointing debtor-selected FCRs with close associations to the lawyers for the current claimants has not resulted in the vigorous oversight that Congress intended. For example, although the specific details vary from case to case, the majority of section 524(g) trusts have included provisions that: (i) lack transparency in the filing and payment of trust claims; (ii) obligate trusts to resist discovery; and (iii) otherwise prevent any effective outside oversight over whether only legitimate claims are being paid.[3]  *See* Dixon, McGovern, and Coombe, *Asbestos Bankruptcy*

---

[3] The foregoing provisions have consistently appeared, with very little variation, as part of the trust distribution procedures in many of the cases in which Patton has served as the FCR or YCST has served as counsel to the FCR. *See, e.g.,* Leslie Controls, Inc. Form of Asbestos Personal Injury Trust Distribution Procedures at ¶ 6.6, available at http://leslie.mfrclaims.com/Resources/Leslie_Controls_-_amended_TDP.pdf  ("All submissions to the Asbestos PI Trust by a holder of an Asbestos Personal Injury Claim, including the proof of claim form and materials related thereto, shall be treated as made in the course of settlement discussions between the holder and the Asbestos PI Trust and intended by the parties to be confidential and to be protected by all applicable state and federal privileges, including, but not limited to, those directly applicable to settlement discussions")*;* Yarway Asbestos Personal Injury Trust Distribution Procedures at ¶ 6.5, available at  http://www.yarwaytrust.com/wp-content/uploads/2018/04/565d1d617259e5027803393b9302f2f3.pdf) (same); First Amended United Gilsonite Laboratories Asbestos Personal Injury Trust Distribution Procedures at ¶ 6.6, available at http://www.ugltrust.com/documents/tdp.pdf (same); Metex Asbestos PI Trust Distribution Procedures in Connection With Metex Asbestos PI Trust Agreement at ¶ 6.6, available at http://metex.mfrclaims.com/Resources/METEX%20API%20TRUST_TDP.PDF (same); Form of Specialty Products Holding Corp. Asbestos Personal Injury Trust Distribution Procedures at ¶ 6.6 (same); ACandS, Inc. Asbestos Settlement Trust Distribution Procedures at ¶ 6.5 (same), available at http://www.acandsasbestostrust.com/wp-content/uploads/2018/05/9644f5811bba6744a445e5dd78fae97c.pdf.

*Trusts: An Overview of Trust Structure and Activity with Detailed Reports on the Largest Trusts,* RAND Institute for Civil Justice, 2010 at xvii (noting lack of publicly available information about trust payments);  Marc C. Scarcella & Peter R. Kelso, *Asbestos Bankruptcy Trusts: A 2013 Overview of Trust Assets, Compensation & Governance*, 12:11 MEALEY ASBESTOS BANKR. REP. 9 (June 2013) (discussing expanded non-disclosure language added to many trusts after 2006 and noting that such provisions "raise questions about the overall lack of transparency and external oversight of trust operations").  As *Garlock* demonstrates, the lack of transparency has allowed the asbestos claims process to become "infected with . . . impropriety."  504 B.R. at 73.  But even though the future victims represented by the FCR would be among the most immediate victims of any fraud or mismanagement, there have been few reported instances of an FCR objecting to such provisions or demanding greater transparency in the claims process.

## C.   The Court May Consider, But Should Give No Deference to, the Debtor's Nomination for FCR

16.     Although the Debtor is free to propose an FCR, the Court is not required to defer to the Debtor's selection.  Because section 524(g) directs the Court to appoint the FCR in the first instance, the Court's function differs from the review it would typically perform in an application to retain a section 327 estate professional, where courts generally defer to the debtor's selection.  *See In re Huntco Inc.*, 288 B.R. (Bankr. E.D. Mo. 2002) (bankruptcy court should give "significant deference" to debtor-in-possession's choice of counsel); *but see In re Wheatfield Business Park LLC*, 286 B.R. 412 (Bankr. C.D. Cal. 2002) (debtor "does not have absolute right to counsel of its choice").  But there is no reason for the Court to give any deference at all to the Debtor's choice of the FCR, because

the FCR does not represent the Debtor and will in fact often be adverse to the
Debtor.

17.     Had Congress intended to give a party other than the court a right to
make an initial selection subject to court approval or disapproval, Congress
presumably would have said so directly, as it has done with other types of fiduciary
selections under the Bankruptcy Code.  *Compare* 11 U.S.C. § 701(a) (United
States Trustee "shall appoint" interim trustee); § 702(b) (creditors "may elect one
person to serve as trustee" in chapter 7 case if certain conditions are met); § 327(a)
("the trustee, with the court's approval, may employ" professionals); § 1104(d)
(United States Trustee "shall appoint" trustee or examiner).  The absence of any
statutory role for the debtor or present claimants in the selection of the FCR makes
clear that the highly sensitive role of the FCR requires complete independence.

18.     The United States Trustee is unaware of any other circumstance in
bankruptcy in which it would be appropriate for a party to select the fiduciary
representing the very interests against which it will negotiate or litigate.  The
request of the debtor to have an FCR of its own choosing is comparable to the
target of an investigation being allowed to choose the section 1104 examiner who
will conduct that investigation, to the debtor-in-possession being allowed to
appoint the members of a creditors' committee, or to a creditor with a disputed
claim being allowed to select the chapter 7 or 11 trustee against whom his claim
will be litigated.  *See In re TBR USA, Inc.*, 429 B.R. 599, 629 (Bankr. N.D. Ind.
2010) ("Congress did not intend to allow creditors who had disputed claims against
the estate to participate in an election and choose their opponent"); *In re Williams*,
277 B.R. 114, 118 (Bankr. C.D. Cal. 2002) (noting that "any creditor with a
disputed claim would love to select her future opponent").  Moreover, the practice
of allowing parties (and their attorneys) to select the fiduciaries and attorneys for

14

their own opponents creates a risk that the interests of future claimants will become subordinated to the interests of a closed circle of professionals—one of the very evils that Congress sought to prevent when enacting the Bankruptcy Code in 1978. *See* H.R. Rep. No. 95-595, 92, 95-96 *reprinted in* 1978 U.S.S.C.A.N. 5963, 6053, 6056-57 (noting concerns about the "bankruptcy ring" that "operates more for the benefit of attorneys than for the benefit of creditors").  Indeed, the USTP was created to be the "watchdog" for the bankruptcy system to ensure that cases are not administered for the narrow benefit of the lawyers and other professionals instead of stakeholders such as creditors and employees.

**D.    The United States Trustee Proposes to Submit a Candidate or Candidates for the Court's Consideration as FCR Who Are Disinterested,  Independent, and Capable of Being an Effective Guardian for Future Claimants**

19.    In deciding whom should be appointed as FCR, the Court should consider not only whether the candidate is qualified, but also whether he or she is the best possible candidate given the important function that the FCR will perform.

20.    There are numerous factors that this Court may wish to weigh when deciding on the best candidate, including efficiency and cost effectiveness, other competing demands on the candidate's time, the candidate's relationships with other professionals and parties in this case and with the closed network of asbestos professionals generally, the existence of actual or potential conflicts, and the candidate's ability and  willingness to advocate vigorously against those parties on behalf of future claimants.

21.    Appointing a candidate using the process proposed here will help ensure that the eventual FCR will be truly neutral because no single party will have controlled the FCR's selection.  And it resembles the model of the early asbestos

15

cases on which section 524(g) was based, *see UNR*, 46 B.R. at 676 (ordering that FCR would be selected from list of candidates submitted by United States Trustee and other parties in interest), as well as the procedures that have been followed by courts in certain other contexts in which fiduciaries are selected directly by the court. *See In re City of Detroit, Michigan*, No. 13-53846 (Bankr. E.D. Mich. Aug. 2, 2013) (order soliciting suggestions for appointment as fee examiner) (attached as Exhibit A to Dkt. 65).

22.    The United States Trustee is soliciting the parties in interest for candidate recommendations and is also independently identifying potential candidates who have distinguished backgrounds in serving as fiduciaries or similar positions of trust.  Once this process is complete, the United States Trustee proposes to provide the Court with recommendations for one or more candidates as FCR along with background information on the candidate or candidates to assist the Court in making its appointment of a truly independent FCR.

**[CONTINUED ON NEXT PAGE]**

16

WHEREFORE, the United States Trustee requests that the Court enter an order appointing an FCR from the candidates to be submitted by the United States Trustee after consultation with the parties in interest and for all other appropriate and just relief.

Dated:  December 31, 2018

DANIEL M. MCDERMOTT,
UNITED STATES TRUSTEE, REGION 21

*s/ Martin P. Ochs*
MARTIN P. OCHS
NY Bar No. MO-1203
GA Bar No. 091608
United States Department of Justice
Office of the United States Trustee
362 Richard B. Russell Building
75 Ted Turner Drive
Atlanta, Georgia  30303
(404) 331-4437
martin.p.ochs@usdoj.gov

17

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

|  |  |
|---|---|
| In re: | ) Chapter 11<br>)<br>) Case No. 18-41768-PWB |
| THE FAIRBANKS COMPANY, | )<br>) |
| Debtor. | )<br>)<br>) |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 31, 2018, I served a copy of this:

**NOTICE OF HEARING ON**
**MOTION OF THE UNITED STATES TRUSTEE TO**
**APPOINT A LEGAL REPRESENTATIVE**
**FOR FUTURE ASBESTOS CLAIMANTS**

and

**MOTION OF THE UNITED STATES TRUSTEE**
**TO APPOINT A**
**LEGAL REPRESENTATIVE**
**FOR FUTURE ASBESTOS CLAIMANTS**

by First Class United States Mail, with adequate postage to ensure delivery, as well as by electronic mail to those parties with electronic mail address indicated below, on the following parties:

**DEBTOR**

The Fairbanks Company
202 N. Division Street
Rome, GA  30165

18

**<u>COUNSEL TO</u>**
**<u>DEBTOR</u>**

William L. Rothschild, Esq.
OGIER, ROTHSCHILD & ROSENFELD, PC
450 Winfield Glen Court
Sandy Springs, GA 30342
Email:  br@orratl.com

Paul M. Singer, Esq.
Luke A. Sizemore, Esq.
REED SMITH LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Email: psinger@reedsmith.com
Email:  lsizemore@reedsmith.com

Andrew M. Roman, Esq.
David F. Russey, Esq.
Cohen & Grigsby, P.C.
625 Liberty Avenue
Pittsburgh, PA 15222-3152
Email: aroman@cohenlaw.com
Email:  drussey@cohenlaw.com

**<u>SECURED</u>**
**<u>CREDITORS</u>**

None

**<u>DEBTOR'S 20 LARGEST UNSECURED CREDITORS</u>**

Atlanta Hardwood Corporation
John Childers
5596 Riverview Road SE
Mableton, GA  30126-2914

OL USA, LLC
Rigo Hernandez
265 Post Avenue, Suite #333
Westbury, NY  11590

S.I. Storey Lumber Company, Inc.
Attn: Hal Storey and Karen Storey
285 Sike Storey Road
Armuchee, GA  30105-2021

AIE Company, Inc.
Pat Burk
6670 Best Friend Road
Norcross, GA  30071

Worldwide Express
Reid Barnette
P.O. Box 733360
Dallas, TX  75373-3360

Durable U.S.A., Inc.
Carrie Chan and Yenju Wang
2801 E. Abram Street
Arlington, TX  76010

Siskin Steel & Supply
David Stine
1901 Riverfront Pkwy
Chattanooga, TN 37408-1037

North Georgia Staffing
Attn: Larry Underkoffler, VP
1301 Shiloh Road
Suite 1030
Kennesaw, GA  30144

FireSide Natural Gas, LLC
Attn: Legal/Finance
Dept. 2655 Dallas Hwy
Suite 250
Marietta, GA  30064

American Builders Insurance Company
Attn: Legal/Finance Dept.
2410 Paces Ferry Road
Suite 300
Atlanta, GA  30339-1802

20

C.H. Robinson Worldwide, Inc. and Subsidiaries
Attn: Leigh Clouser
14701 Charlson Road
Eden Prairie, MN  55347-5076

AT&T
Attn: Legal/Finance Dept.
2561 Piedmont Road NE
C110 Atlanta, GA  30324-3029

Janbar Wheel Corporation
Yecenia Rico
810 Commerce Parkway
Carpentersville, IL 60110

Berliss Bearing Company
Darin Vogt
644 W Mt. Pleasant Avenue
P.O. Box 45 Livingston, NJ  07039

Federal Express Chris Lindsey
2963 N. Airfield Drive
Dallas, TX  75261-4308

Valco/Valley Tool & Die
Attn: Legal/Finance
Dept. 10020
York-Theta Drive North
Royalton, OH  44133

Holston Gases-Rome
Attn: Legal/Finance
Dept. 703
Calhoun Avenue
Rome, GA  30161

Coosa Steel Corp.
Jim Gipson
98 Darlington Drive SW
Rome, GA  30161-4708

RR Donnelley Logistics Services Worldwide Inc.
Richard Oreg
1000 Windham Pkwy
Bolingbrook, IL  60490-3507

Quill Corp.
Attn: Legal/Finance Dept.
100 Schelter Road
Lincolnshire, IL 60069

### COUNSEL TO THE COMMITTEE OF ASBESTOS CLAIMANTS

Ann C. McMillan, Esq.
Caplin & Drysdale, Chartered
600 Lexington Avenue,
21st Floor
New York, New York 10022
Email:  amcmillan@capdale.com

Kevin C. Maclay, Esq.
Caplin & Drysdale, Chartered
One Thomas Circle NW
Suite 1100
Washington, DC 20005
Email:  kmaclay@capdale.com

Leslie M. Pineyro, Esq.
Jones & Walden, LLC
21 8th Street N.E.
Atlanta, GA 30309
Email:  lpineyro@joneswalden.com

### COUNSEL FOR ANY FUTURE CLAIMANTS' REPRESENTATIVE APPOINTED BY THE BANKRUPTCY COURT

None

### PARTIES FILING NOTICE OF APPEARANCE AND/OR REQUEST FOR SERVICE PURSUANT TO BANKRUPTCY RULE 2002

Gary W. Marsh
Dentons US LLP
303 Peachtree Street
Suite 5300
Atlanta, Georgia 30308
Email: gary.marsh@dentons.com

Robert B. Millner
Dentons US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606-6361
Email:  Robert.millner@dentons.com

Bruce E. Mattock
Goldberg, Persky & White, P.C.
11 Stanwix Street
Suite 1800
Pittsburgh, PA 15222
Email:  bmattock@gpwlaw.com

David M. Powlen
BARNES & THORNBURG LLP
1000 N. West Street
Suite 1500
Wilmington, Delaware 19801
Email: david.powlen@btlaw.com


Kevin G. Collins
BARNES & THORNBURG LLP
1000 N. West Street,
Suite 1500
Wilmington, Delaware 19801
Email: kevin.collins@btlaw.com


Abby Vineyard
BARNES & THORNBURG LLP
3475 Piedmont Road N.E.
Suite 1700
Atlanta, Georgia 30305
Email: avineyard@btlaw.com


James J. Leonard
Barnes & Thornburgh LLP
3475 Piedmont Road N.E.
Suite 1700
Atlanta, GA 30305
Email:  jim.leonard@btlaw.com

Lisa Nathanson Busch
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Email:  LBusch@weitzlux.com

## DEBTOR'S PROPOSED FCR

James L. Patton, Jr.
Young Conway Stargatt & Taylor
1000 N West St
Wilmington, DE 19801
Email: jpatton@ycst.com

*/s/ Martin P. Ochs*
MARTIN P. OCHS