# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| THE FAIRBANKS COMPANY, | : | Case No. 18-41768-PWB |
| | : | |
| Debtor. | : | |
| | : | |

**THE COMMITTEE OF ASBESTOS CLAIMANTS' OPPOSITION TO THE MOTION OF THE UNITED STATES TRUSTEE TO APPOINT A LEGAL REPRESENTATIVE <u>FOR FUTURE ASBESTOS CLAIMANTS</u>**

# **TABLE OF CONTENTS**

Background ................................................................................................................................... 1

Preliminary Statement................................................................................................................... 2

Argument ...................................................................................................................................... 3

I. Appointing the FCR on Motion by the Debtor with Support from Present Claimants is Customary and Appropriate ............................................................................................... 4

    A. It is Appropriate for the Debtor to Move to Appoint the FCR .......................................... 4

    B. The Committee's Interests are Substantially Aligned with the FCR in a Section 524(g) Bankruptcy Case ................................................................................................................ 7

II. The Applicable Standard for Appointment of an FCR is "Disinterestedness" ..................... 10

Conclusion .................................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

y

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Amatex Corp.*,
  755 F.2d 1034 (3d Cir. 1985) .......................................................................................... 7

*In re Benson*,
  No. 10-64761-PWB, 2010 WL 2016891 (Bankr. N.D. Ga. Apr. 30, 2010) ................... 11

*Chicago Ins. Co. v. Thorpe Insulation Co.*,
  Case No. CV 08-1020 DSF, 2008 WL 11338766 (C.D. Cal. July 14, 2008) ................ 12

*In re Combustion Eng'g, Inc.*,
  391 F.3d 190 (3d Cir. 2004) .................................................................................. 3, 7, 8

*In re Congoleum Corp.*,
  426 F.3d 675 (3d Cir. 2005) ........................................................................................... 6

*Federal Ins. Co. v. W.R. Grace*,
  Civil Action Nos. 04-844, 04-845, 2004 WL 5517843 (D. Del. Nov. 22, 2004) ...... 5, 6, 11, 12

*In re Federal-Mogul Glob. Inc.*,
  684 F.3d 355 (3d Cir. 2012) ....................................................................................... 8, 9

*In re Garlock Sealing Techs. LLC*,
  504 B.R. 71 (Bankr. W.D.N.C. 2014) ............................................................................ 9

*In re Johns-Manville*,
  36 B.R. 743 (Bankr. S.D.N.Y. 1984), *aff'd*, 52 B.R. 940 (S.D.N.Y. 1985) ............ 5, 6, 11

*In re Johns-Manville Corp.*,
  551 B.R. 104 (S.D.N.Y. 2016) ..................................................................................... 14

*Mt. McKinley Ins. Co. v. Pittsburgh Corning Corp.*,
  Civil Action No. 13-1639, Bankruptcy Case No. 00-22876, 2015 WL 4773425
  (W.D. Pa. Aug. 12, 2015) ............................................................................................ 10

*In re Plant Insulation Co.*,
  734 F.3d 900 (9th Cir. 2013) ......................................................................................... 3

*United States v. Arpaio*,
  887 F.3d 979 (9th Cir. 2018) ....................................................................................... 11

*In re UNR Industries, Inc.*,
  46 B.R. 671 (Bankr. N.D. Ill. 1985) ..................................................................... 5, 6, 11

**Statutes**

11 U.S.C. § 101(14) ..................................................................................................................10, 11

11 U.S.C. § 307 ..................................................................................................................................3

11 U.S.C. § 524(g)(1)(B) ..................................................................................................................3

11 U.S.C. § 524(g)(2)(B)(i) ..............................................................................................................3

11 U.S.C. § 524(g)(2)(B)(ii)(V) ......................................................................................................7

11 U.S.C. § 524(g)(4)(B)(i) ..............................................................................................................3

11 U.S.C. § 1104(d) ........................................................................................................................12

11 U.S.C. § 1121 ................................................................................................................................3

**Dockets**

*In re Celotex Corp.*,
    Case No. 90-10016-8G1 (Bankr. M.D. Fla.) ........................................................................14

*In re Duro Dyne Nat'l Corp.*,
    Case No. 18-27963 (Bankr. D.N.J.) ............................................................................... *passim*

*In re Garlock Sealing Techs., LLC*,
    No. 10-31607 (Bankr. W.D.N.C.) ......................................................................................9, 10

*In re Leslie Controls, Inc.*,
    Case No. 10-12199 (Bankr. D. Del.) ...........................................................................5, 12, 13

*In re Motors Liquidation Company*,
    Case No. 09-50026 (REG) (Bankr. S.D.N.Y.) ........................................................................4

*In re Pittsburgh Corning Corp.*,
    Case No. 00-22876 (Bankr. D. Del.) ......................................................................................10

*In re Sepco Corp.*,
    Case No. 16-50058 (Bankr. N.D. Ohio) ..................................................................................4

*In re Specialty Products Holding Corp.*,
    Case No. 10-11780 (JFK) (Bankr. D. Del.) ............................................................................4

*In re Thorpe Insulation Co.*,
    Case No. 07-19271 (Bankr. C.D. Cal.) ....................................................................................5

*In re Yarway Corp.*,
    No. 13-11025 (Bankr. D. Del.) ..................................................................................................4

**Other Authorities**

Collier on Bankruptcy ¶ 524.07 (Richard Levin & Henry J. Sommer eds., 16th
    ed.) ................................................................................................................................14

iv

The Committee of Asbestos Claimants (the "**Committee**"), by and through the undersigned, hereby submits this opposition to the *Motion of the United States Trustee to Appoint a Legal Representative for Future Asbestos Claimants*, filed December 31, 2018 [ECF No. 157] (the "**UST Motion**").

## BACKGROUND

1. On July 31, 2018 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States District Court for the Northern District of Georgia, Rome Division (the "**Court**").

2. On October 11, 2018, the Office of the United States Trustee (the "**UST**") appointed the Committee, pursuant to section 1102(a) of the Bankruptcy Code [ECF No. 92].

3. On November 20, 2018, with the support of the Committee, the Debtor filed Debtor's Motion for an Order Appointing James L. Patton, Jr., as Legal Representative for Future Asbestos Claimants [ECF No. 117] (the "**Debtor Motion**").

4. On December 14, 2018, the UST filed the Amended Objection of the United States Trustee to Debtor's Motion for an Order Appointing James L. Patton, Jr., as Legal Representative for Future Asbestos Claimants [ECF No. 134] (the "**Objection**").

5. On December 17, 2018, Debtor filed its Reply in Further Support of Debtor's Motion for an Order Appointing James L. Patton, Jr., as Legal Representative for Future Asbestos Claimants [ECF No. 136].

6. On December 18, 2018, the Court held a hearing on the Debtor's Motion, and set a further evidentiary hearing on that motion, which, by agreement of the Debtor, the Committee and the UST, is scheduled for January 31, 2019.

7. On December 31, 2018, the UST filed the UST Motion, the contents of which are largely identical to its Objection.

8.  On January 8, 2019, the Court held a status conference on the UST Motion, and set January 15, 2019 to hear the UST's request to propose additional candidates for the position of legal representative for future asbestos claimants (the "**FCR**").

## PRELIMINARY STATEMENT

9.  The UST Motion seeks to have the Court approve a candidate to be proposed by the UST for the position of FCR in this case. But the UST Motion does not set forth the specifics of the process that the UST is undertaking or will undertake to identify and select such candidate or candidates. Presumably, the Committee will be allowed to depose the UST's candidates and seek discovery of that process in the same way that the UST has indicated that it intends to depose Mr. Patton and seek discovery of the process by which Mr. Patton was selected. Accordingly, it would be premature to rule on that issue now.

10. Moreover, the UST acknowledges that "parties are certainly free to suggest candidates,"[1] that "the Debtor is free to propose an FCR," and that "the Court may consider" Debtor's nomination for the FCR role, *i.e.*, Mr. Patton. UST Motion at 13. The evidentiary hearing to consider Mr. Patton is scheduled for January 31. There is no basis, nor has the UST suggested any, for the Court to abrogate the Debtor's and the Committee's rights to go forward with that hearing and demonstrate to the Court that Mr. Patton should be selected as the FCR.

11. Assuming that the UST does in fact identify and propose candidates for the FCR position sufficiently in advance of the January 31 hearing, those candidates may be considered at that time, along with Mr. Patton. That hearing would also be the appropriate time to consider the process the UST utilized in selecting its candidates, once that information is known.

---

[1] UST Motion at 7.

2

No order is necessary or would be appropriate with respect to the UST Motion or the Debtor Motion before that January 31 hearing.

## ARGUMENT

12. Congress enacted § 524(g), which is designed to "facilitat[e] the reorganization and rehabilitation of the debtor as an economically viable entity," and to "make[] it possible for future asbestos claimants to obtain substantially similar recoveries as current claimants." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 234 (3d Cir. 2004).

13. Section 524(g) provides for the creation of a trust under a confirmed plan of reorganization and for a permanent, post-confirmation injunction channeling the debtor's asbestos claims and demands to the trust for resolution. *See* 11 U.S.C. § 524(g)(2)(B)(i). Once the plan is confirmed and the channeling injunction approved, asbestos claimants and future demand holders are permanently enjoined from seeking to recover from the reorganized debtor and are required to pursue their claims exclusively against a settlement trust. *See id*. § 524(g)(1)(B).

14. One requirement for a § 524(g) plan to be confirmed is that the Court appoint an FCR. 11 U.S.C. § 524(g)(4)(B)(i); *In re Plant Insulation Co.*, 734 F.3d 900, 906 (9th Cir. 2013) (appointment of an FCR is one of "a number of special requirements a plan must meet for a debtor to obtain § 524(g) injunctive relief"). Accordingly a motion to appoint a specific FCR is part and parcel of proposing a § 524(g) plan. Debtors and committees are specifically authorized to file plans (11 U.S.C. § 1121(a), (c)), whereas the UST is specifically prohibited from doing so (11 U.S.C. § 307).

15. The Debtor Motion requests that the Court appoint James Patton, a clearly qualified and disinterested candidate, to fill that role; the UST Motion requests that the Court

3

instead pick an FCR from the candidate or candidates to be proffered by the UST.  UST Motion at 17.

## I. APPOINTING THE FCR ON MOTION BY THE DEBTOR WITH SUPPORT FROM PRESENT CLAIMANTS IS CUSTOMARY AND APPROPRIATE

16. The UST Motion criticizes the fact that it is the Debtor, with the support of the Committee, who presented Mr. Patton to the Court as a candidate for FCR. *See, e.g.*, UST Motion at 4.  However, the UST's position that the Debtor presenting a candidate for consideration is somehow improper is unsupportable.

### A. It is Appropriate for the Debtor to Move to Appoint the FCR

17. As noted above, the appointment of an FCR is an integral part of proposing a § 524(g) plan, and there is no indication in the statute that the UST is empowered to become involved in proposing a plan.  Contrary to the UST's argument, appointing a debtor-nominated FCR with Committee support is a universally approved practice in asbestos bankruptcies.[2]  Indeed, courts have appointed debtor-nominated FCRs in each of the asbestos bankruptcies where the UST

---

[2] *See*, *e.g.*, Order Appointing a Legal Representative for Future Asbestos Personal Injury Claimants Effective as of the Petition Date, *In re Duro Dyne Nat'l Corp.*, Case No. 18-27963 (Bankr. D.N.J. Oct. 17, 2018), ECF No. 191 (the "*Duro Dyne* Order"); Order Appointing Lawrence Fitzpatrick as Legal Representative for Future Asbestos Claimants *Nunc Pro Tunc* to July 18, 2017, *In re Sepco Corp.*, Case No. 16-50058 (Bankr. N.D. Ohio Sept. 13, 2017) , ECF No. 266 (appointing FCR on joint motion of debtor and asbestos claimants' committee); Order Appointing James L. Patton, Jr., Esq. as Legal Representative for Future Asbestos Personal Injury Claimants Nunc Pro Tunc to the Petition Date, *In re Yarway Corp.*, No. 13-11025 (Bankr. D. Del. May 28, 2013), ECF No. 88 (appointing FCR on motion of debtors in case with ad hoc claimants committee); Order Appointing Eric D. Green as Legal Representative for Future Claimants [D.I. 449], *In re Specialty Products Holding Corp.*, Case No. 10-11780 (JFK) (Bankr. D. Del. Oct. 18, 2010), ECF No. 449; Order Pursuant to Sections 105 and 1109 of the Bankruptcy Code Appointing Dean M. Trafelet as Legal Representative for Future Asbestos Personal Injury Claimants [D.I. 5459], *In re Motors Liquidation Company*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. April 8, 2010), ECF No. 5459.

4

and/or insurance carriers have objected to the appointment on the same grounds upon which the UST relies here.[3]

18. For example, in the bankruptcy of W.R. Grace, the debtor proposed three candidates for FCR, one of whom the bankruptcy court appointed over the objections of certain insurers, who appealed the appointment. *W.R. Grace*, 2004 WL 5517843, at *1. In that appeal, the insurers asserted, among other things, that the bankruptcy court erred when it allowed the debtor to nominate the FCR candidates. *Id.* at *8. The insurers argued, as the UST does here, that the FCR's "'nomination' for the position by constituencies with conflicting interests creates an appearance of impropriety," and, thus, it was allegedly improper for the court to appoint a debtor-nominated FCR. *Id.* at *8 n.12

19. The district court rejected this argument. In doing so, the court recognized that Congress modeled § 524(g) after the procedures and standards employed in the "pioneering cases" of *In re Johns-Manville* and *In re UNR Industries*, and further recognized that both of those "contemplated and allowed the participation of parties in interest in [nominating an FCR] . . . by . . . allowing the parties in interest to offer the motions for appointment of a legal representative." *Id.* at *5, *8.

20. As such, the district court concluded that "the Bankruptcy Court's procedures [in appointing a debtor-nominated FCR] mirrored the processes for proposing and

---

[3] *See, e.g.*, *Duro Dyne* Order (approving debtor-nominated FCR over objections of UST and insurers that debtors' nomination tainted candidate's independence); *Federal Ins. Co. v. W.R. Grace*, Civil Action Nos. 04-844, 04-845, 2004 WL 5517843, at *8–9 (D. Del. Nov. 22, 2004) (approving debtor-nominated FCR over insurer objection); Hr'g Tr. 72:23–73:5, *In re Leslie Controls, Inc.*, Case No. 10-12199 (Bankr. D. Del. Aug. 9, 2010) (dismissing objection that "Court should appoint . . . [FCR] and not the debtor" because the court is appointing the FCR regardless of whether candidate is presented by debtor); Hr'g Tr. 33:13–17; 47:21–22, *In re Thorpe Insulation Co.*, Case No. 07-19271 (Bankr. C.D. Cal. Dec. 12, 2007) (granting debtor's motion to appoint FCR in face of argument that debtor should not be allowed to select adversary).

5

appointing the legal representative developed in *UNR* and *Johns-Manville*, [and thus] the Bankruptcy Court used the correct procedures." *Id.* at *9. For that same reason, the court found that the insurers' argument that the debtors' nomination tainted the candidate with an "appearance of impropriety" "ha[d] no merit." *Id.*

21. More recently, in *In re Duro Dyne National Corp.*, the UST and several insurers unsuccessfully objected to the appointment of an FCR, who was not only nominated by the debtors, but had also been selected to serve as a pre-petition FCR in the negotiations of a pre-packaged plan. *See Duro Dyne* Order. The UST objected on several grounds, including that it was improper for the court to allow a debtor to select its adversary.[4] As in the *Grace* bankruptcy, the court rejected this argument.

22. The court reasoned that a debtor's selection of a pre-petition FCR "is critical for a successful pre-negotiated asbestos case," which the Third Circuit has "made clear in [*In re Congoleum Corp.*, 426 F.3d 675 (3d Cir. 2005)] . . . [is] a valid and valuable tool."[5] But, under the UST's position, these "valid and valuable tool[s]" would be "impossible" because every pre-petition FCR must be approved by a debtor, but would then be disqualified from representing futures, *ipso facto*. *See id.* 20:25–21:13. The position that the UST takes here is identical, and suffers from the same defect.

---

[4] *See, e.g.*, Objection of the United States Trustee to Debtors' Motion for an Order Appointing Lawrence Fitzpatrick as Representative for Future Asbestos Claimants at 14, *In re Duro Dyne Nat'l Corp.*, Case No. 18-27963 (Bankr. D.N.J. Sept. 26, 2018), ECF No. 94 ("Nor is the idea of an adversary-selected FCR consistent with the legislative purpose of section 524(g) . . . .").

[5] Hr'g Tr. 21:5–11, *In re Duro Dyne Nat'l Corp.*, Case No. 18-27963 (Bankr. D.N.J. Oct. 16, 2018).

6

### B. The Committee's Interests are Substantially Aligned with the FCR in a Section 524(g) Bankruptcy Case

23. Relying on Third Circuit precedent, the UST asserts that "the FCR is expected to represent interests that are equally adverse both to the debtor and to all current asbestos claimants." UST Motion at 6 (citing *In re Amatex Corp.*, 755 F.2d 1034, 1043 (3d Cir. 1985)). This is simply false. It is true that § 524(g) requires that an FCR be appointed as a prerequisite for a § 524(g) plan, as *Amatex* notes, and no party herein argues to the contrary. But both current and future asbestos claimants have identical interests in maximizing the amount that the Debtor, its insurers, and related parties pay to fund the eventual § 524(g) trust, which will be used to pay both present and future claimants alike.

24. Further, because of the requirements of § 524(g), the Committee and the FCR have closely aligned interests when developing the structure and procedures under which such a trust will evaluate and pay asbestos claims. Section 524(g) requires that present and future claims be valued and paid "in substantially the same manner," and, therefore, present and future claims must be subject to substantially the same processes and criteria for making and recovering on trust claims.[6]

25. The United States Court of Appeals for the Third Circuit has made clear that the interests of current and future asbestos claimants are closely aligned. "The several prerequisites set forth in § 524(g) are designed to protect the interests of *future* claimants whose claims are permanently enjoined. Among these, the plan must be approved by a super-majority of *current* claimants . . . ."[7] The Third Circuit then went on to note that those requirements, specifically including the super-majority voting requirement, "are specifically tailored to protect

---

[6] 11 U.S.C. § 524(g)(2)(B)(ii)(V).

[7] *Combustion Eng'g, Inc.*, 391 F.3d at 237 (emphasis added).

7

the due process rights of future claimants." *Id.* at 234 n.45. In other words, under § 524(g), the interests of current and future claimants are so closely aligned that the votes of current claimants are a proxy for the interests of future claimants, and are in fact necessary to constitutionally channel the claims of future claimants to a § 524(g) trust.

26. One area in which the interests of the present and future claimants can, potentially, diverge is the "payment percentage"—the portion of the liquidated claim value that a claimant receives from the trust. At a simplistic level, while the goal for all parties is to reach the correct payment percentage, present claimants might be expected to propose a less conservative payment percentage while FCRs might propose a more conservative one. In actual practice, the setting of a payment percentage is complex, and turns on fluctuating asset values and uncertain, periodically updated claims projections. As such, payment percentages among asbestos trusts fluctuate over time. But the fact that payment percentages sometimes go down is entirely consistent with the FCRs at those trusts advocating effectively for preserving funds for future claimants.

27. In an attempt to create a crisis atmosphere, the UST cites various asbestos defense-side publications and articles to criticize the functioning of asbestos trusts, and to assert that "future claimants have not fared well" in them. UST Motion at 10. Those arguments have been asserted, and rejected, by multiple courts. For example, in the *Federal-Mogul* case, the Third Circuit considered objections to confirmation of a § 524(g) plan of reorganization by insurance companies who criticized the functioning of trusts, including with reference to some of the same secondary sources relied upon by the UST Motion, and rejected those criticisms. The Third Circuit held that "[f]urthermore, the trusts appear to have fulfilled Congress's expectation that they would serve the interests of both current and *future* asbestos claimants and corporations saddled with

8

asbestos liability." *In re Federal-Mogul Glob. Inc.*, 684 F.3d 355, 362 (3d Cir. 2012) (emphasis added).

28. The Third Circuit went on to note that:

> In particular, observers have noted the trusts' effectiveness in remedying some of the intractable pathologies of asbestos litigation, especially given the continued lack of a viable alternative providing a just and comprehensive resolution;
>
> Empirical research suggests the trusts considerably reduce transaction costs and attorneys' fees over comparable rates in the tort system; and
>
> Recently, the trusts have required more rigorous medical evidence, and significantly reduced the valuation for non-malignant claims.

*Id*. It is also noteworthy that the court in the *Duro Dyne* bankruptcy recognized that "academic articles and studies by think tanks may often be bottomed on inaccurate assumptions or specific agendas." Hr'g Tr. 23:5–7, *In re Duro Dyne Nat'l Corp.*, Case No. 18-27963 (Bankr. D.N.J. Oct. 16, 2018).

29. The UST Motion similarly draws attention to the *Garlock* bankruptcy, although its vague references to the "claims process" obscure the fact that *Garlock* discussed alleged fraud in the tort system, not the trust system. UST Motion at 11.[8] The UST has uncritically adopted the asbestos defense bar's overblown rhetoric about the case, which under scrutiny fails to live up to its billing. *Garlock* rested on the examination of just fifteen cases, and itself noted that those cases "are just a minute portion of the thousands that were resolved by Garlock in the tort system. And they are not purported to be a random or representative sample." *Garlock*, 504 B.R. at 85. The opinion itself did not resolve anything. Ultimately, the bankruptcy court in

---

[8] *In re Garlock Sealing Techs. LLC*, 504 B.R. 71 (Bankr. W.D.N.C. 2014).

9

*Garlock* approved a plan that settled the liability at a substantial multiple of the figure discussed in the opinion.[9]

30.     Subsequent attempts to find the "fraud" *Garlock* alleged have fizzled. Shortly after the *Garlock* estimation record was made public, an insurance company combed through it in an attempt to find "fraudulent" votes to support overturning the confirmation order in Pittsburgh Corning's asbestos bankruptcy.[10]  After an exhaustive search, it argued that ten ballots, out of more than 357,000 ballots cast by asbestos victims, were fraudulent.[11]  Unsurprisingly, the court rejected the argument.[12]

## II.     THE APPLICABLE STANDARD FOR APPOINTMENT OF AN FCR IS "DISINTERESTEDNESS"

31.     One contention upon which the UST Motion depends is that an FCR must allegedly be "independent" and "effective," in addition to being disinterested.  While the Committee believes that Mr. Patton is both (to the extent there is any objective basis to ascribe meaning to those subjective words in this context), the UST's contention is incorrect in any event.

32.     As many courts have squarely held, the standard applicable to appointment of an FCR is whether the candidate is "disinterested" under 11 U.S.C. § 101(14).  That section defines a "disinterested person" as one who:

---

[9]     Order Recommending Confirmation, *In re Garlock Sealing Techs., LLC*, No. 10-31607 (Bankr. W.D.N.C. May 24, 2017), ECF No. 5972.

[10]    *See Mt. McKinley Ins. Co. v. Pittsburgh Corning Corp.*, Civil Action No. 13-1639, Bankruptcy Case No. 00-22876, 2015 WL 4773425 (W.D. Pa. Aug. 12, 2015).

[11]    *Id.* at *4; Decl. of Kathleen M. Logan Certifying Methodology for Tabulating Votes on, and Results of Voting with Respect to, the Modified Third Am. Plan of Reorganization for Pittsburgh Corning Corp. Dated January 29, 2009 Jointly Proposed by Pittsburgh Corning Corp., The Official Comm. of Asbestos Creditors, and the Future Claimants' Representative, *In re Pittsburgh Corning Corp.*, Case No. 00-22876 (Bankr. D. Del. Feb. 18, 2010), ECF No. 7478.

[12]    *Mt. McKinley Ins. Co.*, 2015 WL 4773425, at *5–6.

10

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.[13]

33. As the UST itself acknowledges, "when enacting section 524(g), Congress did not write on a blank slate. The FCR mechanism of section 524(g) was closely modeled on two earlier asbestos bankruptcy cases, *In re Johns-Manville Corp.*, 68 B.R. 618 (Bankr. S.D.N.Y. 1986), and *In re UNR Industries, Inc.*, 46 B.R. 671 (Bankr. N.D. Ill. 1985)." UST Motion at 8 (citing H.R. Rep. No. 103-835 at 41). What the UST has ignored, however, is that the *UNR* court's requirement for an FCR candidate was that the candidate be "disinterested." *UNR*, 46 B.R. at 677; *see also W.R. Grace*, 2004 WL 5517843, at *7 (same).

34. The UST argues that "*Manville* determined that there were three possible models for the proposed FCR: (i) the guardian ad litem, (ii) the court-appointed amicus curiae on behalf of an absent party, and (iii) the section 1104 examiner." UST Motion at 8 (citing *Manville*, 36 B.R. at 758 n.7). But even if those models were relevant (and they are not),[14] they would point to the disinterestedness standard in any event. *See In re Benson*, No. 10-64761-PWB, 2010 WL 2016891, at *2 (Bankr. N.D. Ga. Apr. 30, 2010) (appointing guardian ad litem after finding candidate "is qualified . . . and is a disinterested party"); *United States v. Arpaio*, 887 F.3d 979,

---

[13] § 101(14).

[14] The *Manville* court specifically stated that it considered these other forms of representation only in a "preliminary fashion" and that they were "no more than precatory and are not preclusive of other considerations." *In re Johns-Manville*, 36 B.R. 743, 758–59 (Bankr. S.D.N.Y. 1984), *aff'd*, 52 B.R. 940 (S.D.N.Y. 1985). Indeed, the UST's Motion recognizes that "[t]he subsequent history of Manville does not make clear" what standard was ultimately applied. UST Motion at 8 n.1.

11

982 (9th Cir. 2018) (appointing amicus curiae under "long-standing practice . . . to appoint *disinterested* counsel" as such (emphasis added)); 11 U.S.C. § 1104(d) (requiring only that examiner must be disinterested and someone other than UST).

35. Within the last three months, the United States Bankruptcy Court for the District of New Jersey surveyed the relevant law and concluded that disinterestedness was the applicable standard. "The Court followed the approach taken nearly universally by other courts in applying the disinterested person standard set forth in 11 U.S.C. Section 101(14) as the correct disqualification standard for assessing the appointment of a legal representative under Section 524(g) . . . ." Hr'g Tr. 9:17–22, *In re Duro Dyne Nat'l Corp.*, Case No. 18-27963 (Bankr. D.N.J. Oct. 16, 2018). *See also, e.g.*, *W.R. Grace*, 2004 WL 5517843, at *6–7 (examining history of appointing FCRs and concluding that "disinterested" standard is what Congress intended for appointing FCRs pursuant to § 524(g)); *Chicago Ins. Co. v. Thorpe Insulation Co.*, Case No. CV 08-1020 DSF, 2008 WL 11338766, at *1 (C.D. Cal. July 14, 2008) (noting that bankruptcy court applied disinterestedness standard for appointing FCR); Hr'g Tr. 70:15–19, *In re Leslie Controls, Inc.*, Case No. 10-12199 (Bankr. D. Del. Aug. 9, 2010) ("Specifically in connection with what standard applies, I am going to apply the disinterestedness test. And I would note that the disinterested test is the highest level of duty or standard in the Bankruptcy Code for the appointment of anybody.").

36. Indeed, when the UST argued for separate effectiveness and independence standards in the ongoing *Duro Dyne* bankruptcy, the court was "at a loss to understand just how at the inception of a case any court can ever be assured of the effectiveness of any professional or representative." Hr'g Tr. 17:12-14, *In re Duro Dyne Nat'l Corp.*, Case No. 18-27963 (Bankr. D.N.J. Oct. 16, 2018). When the *Duro Dyne* court asked the UST "how would I gauge . . . that

12

[an FCR candidate] . . . would be effective," the UST replied: "[P]erhaps you would be able to identify somebody's prior experience in similar situations." Hr'g Tr. 118:15–19, *In re Duro Dyne Nat'l Corp.*, Case No. 18-27963 (Bankr. D.N.J. Oct. 15, 2018); *see also* Hr'g Tr. 17:14–19, Oct. 16, 2018 ("As acknowledged by the Office of the U.S. Trustee at oral argument, when asked how the Court could be assured of any applicant's effectiveness at the early stage of the proceeding, the obvious answer to the Court was that the Court must look to the applicant's experience and knowledge."). In other words, even the UST's formulation for "effective" necessarily boils down to being qualified.

37. To the extent that the UST Motion is premised on the concept that having served as an FCR in other cases should be a negative factor, that argument is nonsensical. The formation and operation of a § 524(g) trust are complex undertakings involving claims forecasting and projecting, compensation levels and claims valuation for multiple asbestos diseases, an understanding of claims resolution processes, a familiarity with how asbestos litigation is conducted in the tort system outside of bankruptcy, and numerous other factors. Substantial relevant experience is critical so that the FCR can quickly and efficiently evaluate the asbestos-related issues arising in this bankruptcy without expending the estate's limited resources to get up to speed.

38. Indeed, other courts have cited precisely such experience while appointing Mr. Patton as the FCR in other cases. *See, e.g.*, Additional Findings in Support of Affirmation Order at 5–6, *In re Leslie Controls, Inc.*, Case No. 10-12199 (Bankr. D. Del. Mar. 25, 2011), ECF No. 591 ("The selected FCR is James L. Patton, Jr., an attorney in private practice with impressive experience serving as an FCR in similar cases, or representing the FCR in such asbestos-related cases . . . . This Court is fully satisfied that the selecting of Mr. Patton was in the best interests of

13

the future claimants . . . ."); *see also* Hr'g Tr. 29:4–13, *In re Celotex Corp.*, Case No. 90-10016-8G1 (Bankr. M.D. Fla. Mar. 27, 2006) (appointing Mr. Patton as FCR for the Celotex Trust and stating: "Mr. Kozyak states, as is the consensus, that Mr. Patton is well-regarded, and deservedly well-regarded. There's no suggestion of a current conflict. It's also important that he is knowledgeable about this case, about Celotex, about the plan, and about the past developments in this case, and it's also important that he's knowledgeable about the other issues that confront the case and the Legal Representative, not only in this case but in general.").

39. The appointment of a representative with little or no relevant experience (which the UST seems to suggest is the point of its "open" process) could also introduce a risk that the § 524(g) channeling injunction may subsequently be challenged on the basis that the FCR was not adequate and, therefore, the future claimants were deprived of due process.[15]

40. This Court should have the opportunity to observe Mr. Patton, and any other candidates presented, and determine whom should be selected as the FCR on the 31st, including from the evidence submitted at that hearing.

---

[15] If an FCR's representation proves inadequate then "it is doubtful that the injunction provisions binding [future claimants] would be found to comply with the due process clause." Collier on Bankruptcy ¶ 524.07 (Richard Levin & Henry J. Sommer eds., 16th ed.); *accord In re Johns-Manville Corp.*, 551 B.R. 104, 114 (S.D.N.Y. 2016).

14

## CONCLUSION

For the reasons set forth above, the UST Motion should be denied.

Dated: January 11, 2019

Respectfully submitted,
**CAPLIN & DRYSDALE, CHARTERED**

*/s/ Kevin C. Maclay*
Kevin C. Maclay (D.C. Bar No. 449059)
Todd E. Phillips (D.C. Bar No. 986747)
Kevin M. Davis (D.C. Bar No. 1004946)
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
Telephone: (202) 862-5000
Facsimile: (202) 429-3301
Email: kmaclay@capdale.com
       tphillips@capdale.com
       kdavis@capdale.com

**JONES & WALDEN, LLC**
Leslie Pineyro
Georgia Bar No. 969800
21 Eighth Street, NE
Atlanta, Georgia 30309
Telephone: (404) 564-9300
Facsimile: (404) 564-9301
Email: lpineyro@joneswalden.com

*Counsel for Official Committee of Asbestos Claimants*

15