# EXHIBIT 2

Joseph W. Grier III



GRIER
&
CRISP

ATTORNEYS AT LAW

January 10, 2019

By email Nan.R.Eitel@usdoj.gov

Nan Roberts Eitel
Office of the United States Trustee

Dear Ms. Eitel:

Further to your recent telephone conversion with Jonathan Guy, the purpose of this letter is to express my willingness to serve as the legal representative in the asbestos bankruptcy case of *The Fairbanks Company*, case number 18-41768, Northern District of Georgia. I am enclosing a copy of my *curriculum vitae*, which reflects recent cases in which I have acted as a fiduciary. I understand from Jonathan that you are familiar with the trust and related documents from the Garlock bankruptcy case (*In re Garlock*; case number 10-31607, Western District of North Carolina).

I will be glad to discuss this role with you further.

Sincerely,

Joseph W. Grier, III

Enclosure

cc: Jonathan Guy, Esq. (by email jguy@orrick.com)

101 North Tryon Street, Suite 1240 • Charlotte, NC 28246 • Tel: 704 375-3720 • Fax: 704 332-0215

www.grierlaw.com • jgrier@grierlaw.com • Direct Dial: 704 332-0201

Grier & Crisp, P.A.  Telephone 704 332-0201
101 N. Tryon St., Suite 1240  Fax 704 332-0216
Charlotte, NC  28246  Email jgrier@grierlaw.com

# Joseph W. Grier, III

**North Carolina Licensed Attorney**
Mr. Grier is a licensed attorney in the State of North Carolina and certified as a business
bankruptcy specialist by the North Carolina State Bar and as a specialist in Business Bankruptcy
Law by the American Board of Certification.  A substantial portion of his practice is devoted to
commercial debtor-creditor work.  He has served as a fiduciary in a number of cases, including
as a legal representative in an asbestos bankruptcy, a federal and state court receiver and a
bankruptcy trustee.  Following is a brief description of some of the matters he has handled as a
fiduciary.

**Legal Representative**
Mr. Grier served as the Future Claims Representative in the asbestos bankruptcy case of *Garlock
Sealing Technologies, LLC,* case number 10-31607, U.S. Bankruptcy Court, Western District of
North Carolina, a case which resulted in the establishment and funding of a $480M trust to
resolve Garlock's mass tort liability arising from the manufacture and sale of asbestos or
asbestos containing products.

**Bankruptcy Fiduciary**
Mr. Grier is currently the chapter 7 bankruptcy trustee in four related cases in the U.S.
Bankruptcy Court for the Western District of North Carolina which were investment vehicles for
a $50M plus Ponzi scheme run by Richard Siskey (TSI Holdings, LLC, 17-30132; WSC
Holdings, LLC, 17-30338; SouthPark Partners, LLC, 17-30339; and Sharon Road Properties,
LLC, 17-30363).  Mr. Grier has adjudicated claims and is pursing the collection of funds with
which to make a distribution to Ponzi victims.

Mr. Grier was a member of the Bankruptcy Trustee's Panel for the Western District of North
Carolina from 1979 through June 1984.  In that capacity, he was appointed as both an operating
and a liquidating trustee in numerous cases before that court, in which his responsibilities
included the collection and liquidation of assets, determining claims, and making distributions.

**Federal Receiver**  (all Western District of North Carolina)
*Commodity Futures Trading Commission ("CFTC") v. James Harvey Mason*, case number 3:13-
CV-196.  Mr. Mason was found to have fraudulently solicited, accepted and pooled funds to
trade off-exchange foreign currency contracts and ultimately misappropriated a significant
portion of those funds for purposes other than forex trading.  There was a parallel criminal
proceeding in the District Court against Mr. Mason (3:14-cr-122) in which Mr. Mason pled
guilty to securities fraud and filing a false tax return and for which Mr. Mason received 60
months of active prison time.  The receiver adjudicated claims and made a distribution of
approximately $1.7M to customers.

*CFTC vs. Barki, et al*, case number 3:09-CV-106 (GCM).  The receiver collected over $3.8M
from bank accounts, the sale of a horse farm, the sale of a Maserati and three other vehicles,
settlements with various individuals, and the liquidation of a life insurance policy.  The receiver
adjudicated claims and made a distribution to customers.

*CFTC vs. CapitalStreet Financial LLC*, et al, case number 3:09-cv-387-RJC-DCK.  The receiver collected over $375,000 from bank accounts, precious metals and stones, and the liquidation of a 1997 Ferrari and a 2003 BMW.  The receiver adjudicated claims and made a distribution to customers.

*Federal Trade Commission and the State of North Carolina vs. Resort Sales Group, et al*., case number 3:97-cv-382 MU, from 1997 to approximately 2000.

**State Receiver**
Mr. Grier has served as a state court receiver in a number of other cases, in some instances at the request of the State of North Carolina and in other instances as the request of financial institutions foreclosing on commercial properties.

From 2007 through 2014, he served, at the request of the State of North Carolina, as the receiver for a group of entities that attempted, unsuccessfully and fraudulently, to develop resort property in the mountains of North Carolina.  See *State of North Carolina ex rel. Roy Cooper, Attorney General vs. Peerless Real Estate Services, Inc., et a*l, 07 CVS 009006, Wake County, NC, Superior Court.  The development was known as the Village of Penland.  In that receivership, Mr. Grier obtained a forensic accounting of the expenditure of over $90 million of investor monies and filed a number of lawsuits to recover money.  Five of the principals of the Village of Penland entities pled guilty to federal criminal charges.  The United States District Court also appointed Mr. Grier as a special master to assist the District Court fashion restitution orders.

**Background**
Born in Charlotte, North Carolina, 1951; Admitted to bar, 1977, North Carolina and U.S. District Court for the Western District of North Carolina; U.S. Court of Appeals, Fourth Circuit (1979); U.S. District Court for the Middle District of North Carolina (1988).

**Education**
University of North Carolina (B.A.,1973; J.D., 1977). Member, Order of the Grail.

**Memberships**
Mecklenburg County Bar Association (Member, Executive Committee, 1983- 1986), North Carolina Bar Association (Member, Bankruptcy Law Section); American Bar Association; North Carolina State Bar; The American Law Institute.

**Community Activities**
Elder, Myers Park Presbyterian Church; Executive Board & former President, Mecklenburg County Council, Boy Scouts of America; Member, Dowd YMCA Board of Managers

# Garlock CRP

Joseph W. Grier, III, *Future Claimants' Representative*
Jonathan P. Guy, *Counsel to the Future Claimants' Representative*



# What We Will Cover



- Overview of the Trust and CRP

- FCR's Approach to the CRP

- The Futures Problem

- Notable differences between Garlock CRP and standard TDPs





# Overview of the Garlock Trust



- 11 U.S.C. § 524(g) Trust

- Funding: $480 million

- Trustee: Lewis R. Sifford

- Confirmation Hearing: May 15-17, 2017



# Overview of the Garlock CRP



- **The CRP is the result of years-long negotiations by and among the Debtors, the ACC and the FCR**.

- **Compensable Diseases**: mesothelioma; asbestos-related cancers; severe asbestosis; disabling and non-disabling asbestosis.

- **Claims Payment Ratio**: 85% for mesothelioma claims; 10% for lung cancer claims; 5% for all other cancer and asbestosis claims.

- **Two Levels of Review: Expedited and Extraordinary**.

# Expedited vs. Extraordinary Review



## Expedited Review

- Majority of claimants.

- Malignant and non-malignant claimants with at least 6 months' exposure to Garlock products.

- Must meet all medical criteria under CRP.

- Preliminary Maximum Settlement Values ("MSVs") range from $740 to $148,000, depending on claimant's occupation and contact group.

## Extraordinary Review

- Only available for cases of truly extraordinary exposure.

- Must meet all exposure and medical criteria of CRP, and credibly document a history of extraordinary exposure to Garlock products with little to no exposure to any other entity's products.

- Disputes as to whether a claim is eligible for Extraordinary Review submitted to Extraordinary Claims Panel established by Trustee with consent of CAC and FCR.

- Qualifying claimants eligible to receive settlement offer 5 times greater than what they would receive under Expedited Review.

# The Futures Problem



- **During pendency of Garlock bankruptcy case, more information came to light concerning problem of current claimants receiving higher recoveries than future claimants.** S. Todd Brown, "How Long is Forever This Time?  The Broken Promise of Bankruptcy Trusts," 61 Buff. L. Rev. 537, 538-39 (2013) ("[A]lthough trusts are established on the promise to pay all current and future victims equitably, this promise has already been broken at all but a few trusts."); Marc C. Scarcella, et al., A Reorganized Mess: The Current State of the Asbestos Bankruptcy Trust System, 14 Mealey's Asbestos Bankruptcy Report, no. 7, February 2015 at 1 ("Asbestos bankruptcy trust funds are intended to pay initial and future claims in an equitable manner decades into the future.  However, due to the accelerated depletion of funds, many asbestos trust claimants receive only half as much today as compared to the amounts similarly situated claimants received from the same trusts just six years ago.").

- **Multiple asbestos bankruptcy trusts reduced their payments to future claimants just in the period 2010-2013.** *See* Scarcella, *supra*, 14 Mealey's Asb. Bankr. Rep., no. 7, 2015 at 3, Figure 2.

- **Fundamental reason for disparate treatment:**  repeated underestimation of claims that qualify for payment under terms of standard TDPs, often non-malignant claims.   As more claims come in than expected, payment percentage has to be lowered.

# The FCR's Approach to the CRP



- **Encourage filing of legitimate claims; discourage illegitimate claims that exhaust trust resources and dilute trust funds to detriment of future claimants.**

- **Focus on compensating valid claimants.**

- **Compensation based on merit, measured objectively, with claimants with the most serious illnesses receiving the highest compensation.**

- **Structure CRP to give greatest chance that "over the life of the Settlement Facility, Present and Future Claims are treated fairly and equitably in all matters, including the payment of settlement amounts from the Settlement Facility that are as equal as possible." CRP § 2.1(b).**

# Main differences between CRP and Standard TDPs



- Stated Goals

- Bar Date

- Filing Fees

- Claims Payment Ratio

- MSVs and MAP

- Valuation of Claims

- Exposure Evidence

- Medical Requirements

- Treatment of Canadian Claims

- Identification of Other Claims

- Relevance of Jurisdiction and Law Firm

- Deferrals

- Catch-All Provision

- Audit Powers of Trustee

# Stated Goals



## Standard TDP

- "[The TDP] is designed to provide fair, equitable, and substantially similar treatment for all Channeled Asbestos PI Trust Claims that may presently exist or may arise in the future in substantially the same manner." Pittsburgh Corning TDP § 1.1

## Garlock CRP

- "The CRP are designed and shall be implemented by the Trustee to the best of his or her ability to (a) generate settlement offers to Claimants that are fair, expeditious and properly reflective of the injuries . . . and (b) ensure that over the life of the Settlement Facility, Present and Future Claims are treated fairly and equitably in all matters, including the payment of settlement amounts from the Settlement Facility that are as equal as possible."

# Bar Date



## Standard TDP

- No bar date.

## Garlock CRP

- Current Garlock claimants required to file proofs of claim by 10/6/2015.

- All claimants who entered into pre-petition settlements with Garlock, whether or not enforceability of the settlement is disputed, required to file proofs of claim by 9/30/2014.

- Claims filed after the bar date not compensable absent relief from Bankruptcy Court.

- Avoids surprise of more claims coming in than expected.

- Ensures Trustee has as much information as possible at the outset to intelligently set MSVs and maximum annual payment ("MAP").

- Trustee must use bar date information in setting MSVs and MAP.

# Filing Fees



## Standard TDP

- No filing fee; as such, nothing to be lost by filing a claim that may well be rejected later.

- Review of such claims exhausts trust resources and raises potential that "illegitimate" claims are paid to detriment of valid claims.

## Garlock CRP

- Reasonable filing fees.

  – $100 for mesothelioma claims.

  – $75 for lung cancer claims.

  – $50 for other cancer claims.



- Fully refundable where claimant receives and accepts offer from Trust.

- Deters filing of illegitimate claims.

# Claims Payment Ratio



## Standard TDP

- All malignancy claims included within one class.

- Severe asbestosis also included in same class as mesothelioma and all other malignancies.

- Trustee may amend claims payment ratio after five years have elapsed to prevent "manifest injustice," but no amendment allowed based solely on greater volume of non-malignant asbestosis or pleural disease claims than expected.

## Garlock CRP

- Mesothelioma claims treated as single class.

  - 85% for mesothelioma claims.

  - 10% for lung cancer claims.

  - 5% for other cancer claims and asbestosis.

- Same, but no amendment allowed based solely on greater volume of non-mesothelioma claims than initially forecasted.

# MSVs and MAP



## Standard TDP

- Trustee sets MSVs and MAP with consent of CAC and FCR.

- MAP and MSVs determined annually.

- No ability of Trustee to adjust MSVs or MAP at his/her discretion.

## Garlock CRP

- Trustee independently sets MSVs and MAP in a "prudent and conservative manner," after consulting with CAC and FCR.

- Trustee actively monitors claim volumes.

- If, at any time, Trustee determines, in his sole discretion, that future claimants may not receive settlement amounts equal to current claimants:
  - Trustee must immediately reduce MSVs and/or MAP; and
  - All payments frozen until Trustee is satisfied that MSVs and/or MAP have been adjusted properly.

# Valuation of Claims – Objective Factors



- Claims valued by reference to objective factors, with assigned weights.

- Medical Information Factors:
  - 1.0 for mesothelioma;
  - 0.25 for asbestos-related lung cancer and severe asbestosis;
  - .10 for other asbestos-related cancer;
  - .03 for disabling asbestosis; and
  - .02 for non-disabling asbestosis.

- Other factors with assigned weights: Age, Life Status, Dependents, Economic Loss, Duration of Exposure, Jurisdiction (current claimants only), Law Firm (current claimants only).

# Exposure Evidence – Key Differences from TDPs



- Occupation codes and contact groups used to determine claimant's exposure; takes guesswork out of exposure evidence.

- Claimant must show more than that he/she worked with or near an asbestos product; rather, claimant must show that he/she was, "on a regular basis," engaged in activities that the Court found resulted in the release of asbestos fibers or dust (i.e., grinding, scraping or wire brushing gaskets to remove them, cutting gaskets from asbestos sheet material; or cutting or removing asbestos packing).

- Claimant's duration of performing activities in which exposure occurred is an express factor in valuation of claim, with 8 or more years of performing activity entitled to the greatest weight for this factor.

- Site List Limitation—evidence that claimant worked at a site where Garlock products were used is not, by itself, sufficient to demonstrate required exposure.

- More detailed exposure evidence required—all claimants must identify: (i) name of residence, plant, ship or commercial building, and city and state where exposure occurred; (ii) month and year exposure began and ended; (iii) occupation, job title and employer at time of exposure; (iv) type of Garlock product to which they were exposed; and (v) manner in which exposure occurred.

# Medical Requirements – Key Differences from TDP



- All diagnoses must be made by board-certified physicians not on inactive status.

- Diagnosis of asbestosis must be made by a board-certified pathologist who personally reviewed the claimant's pathology, or a board-certified internist, radiologist, pulmonologist or occupational medicine physician who physically examined the claimant or reviewed his/her medical records; not enough for any physician to examine claimant or his/her records.

- Trustee may evaluate reliability of diagnosis by considering whether the diagnosis discussed the basis for the opinion and the reason for rejection of other reasonably possible diagnoses.

- Trustee not limited in what types of medical records he may require.

# Treatment of Canadian Claims

   

## Standard TDP

- Canadian claims treated the same as U.S. claims.

## Garlock CRP

- No special treatment for Canadian claims.

- Canadian claims treated the same as all other foreign claims – convenience class settlement.

- Why? Garlock rarely, if ever, paid Canadian claims in the tort system, and when it did, paid nuisance value settlements.

- Motley Rice and Garlock agreed to settlement paying Canadian claims outside the Trust. Saves the Trust processing such claims and an estimated $7 million.

# Identification of Other Claims



## Standard TDP

- No requirement to identify other asbestos-related personal injury claims made in lawsuits or to other trusts.

## Garlock CRP

- Extraordinary Review claimants must disclose to the Trust the following information about all other lawsuits, settlements or trust claims they've made relating to exposure to asbestos:

  – Name of entity against whom claim was made;

  – Date of claim;

  – Amounts paid to, or to be received by, claimant;

  – Documentary evidence of exposure submitted with that claim.

- Claimant must also certify that, with the exception of those other claims disclosed, no other entity known to claimant is potentially responsible for the injuries that are the basis of his/her claim against the Trust.

# Relevance of Jurisdiction and Law Firm



## Standard TDP

- Settlement and verdict histories from claimant's jurisdiction and law firm taken into account for each claimant who selects individual review.

## Garlock CRP

- All claimants presumptively treated the same, regardless of who their counsel is or what jurisdiction they are in.

- If a current claimant convinces the trustee that his/her jurisdiction or counsel's pre-petition settlement history justifies a higher settlement offer, claimant will receive minimally higher payment.

- No different treatment for future claimants by reference to law firm or jurisdiction, as all such claims will be paid by the Trust and not litigated.

# Deferrals



## Standard TPD

- Claimants may defer their claims for three years.

## Garlock CRP

- Claimants may, within 365 days of filing their claim, elect to have their claim deferred for a maximum of one year.

- If the claimant fails to certify his or her claim is ready for review within 365 days after deferral, the claim is stricken and not eligible for payment.

- Reduces level of uncertainty regarding trust's inventory of, and liability for, pending claims.

# Catch-All Provision



## Standard TDP

- Permits payment of claims that fail to meet the medical/exposure criteria of the TDP where Trust is satisfied that claim would be cognizable in the tort system.

## Garlock CRP

- No catch-all provision allowing for payment of claims that fail to satisfy the criteria for payment under the CRP.

- Ensures that the same objective standards are applied in a consistent manner to all claimants.

- Reduces burden on, and expense to, trust of reviewing claims in which claimants assert they are entitled to an exception to the CRP criteria.

# Audit Powers of Trustee



## Standard TDP

- Development of audit program by Trustee not mandated

## Garlock CRP

- Trustee has broad, and sole, discretion to determine whether information is unreliable and, if so, whether to disregard or exclude it.

- Trustee shall develop an audit program in consultation with CAC and FCR; Trustee may request any relevant non-privileged information when conducting an audit.



**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

IN RE:

**THE FAIRBANKS COMPANY,**

**Debtor.**

Case Number:   18-41768-PWB

Chapter 11

**DECLARATION OF PROPOSED LEGAL
REPRESENTATIVE, JOSEPH W. GRIER, III**

Joseph W. Grier, III, being first duly sworn, deposes and says:

1.      I am an attorney at law admitted to practice before the state and federal courts in North Carolina and am a member of the law firm of Grier & Crisp, PA (the "Firm"), with offices at 101 North Tryon Street, Suite 1240, Charlotte, North Carolina 28246.  I am in good standing with all courts in which I am admitted.

2.      I have expressed to the United States Trustee my willingness to serve as the legal representative for future asbestos personal injury claimants (the "Legal Representative") in this case pursuant to 11 U.S.C. § 524(g)(4)(B)(i) and the terms of any Order that may be entered by this Court relative to the appointment of such a Legal Representative.

3.      I submit this declaration in compliance with and to provide disclosure pursuant to Bankruptcy Code Section 327 and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").  Unless otherwise stated in this declaration, I have personal knowledge of the facts hereinafter set forth.  To the extent that any information disclosed herein may require amendment or modification upon further analysis by me or as additional creditor information becomes available or if any new relevant facts or relationships are discovered by me or made known to me, I will submit a supplemental declaration.

4.      The Firm has performed a conflicts check based on the information provided by the United States Trustee including the "Interested Parties" list attached hereto as Schedule A. Based upon such review, to the best of my knowledge, information and belief, neither I, the Firm, any member of the Firm, nor associate thereof, insofar as I have been able to ascertain at this time, has any connection with the Debtor or any of its creditors, the United States Trustee, or any other party in interest in the above-captioned case, or its respective attorneys except for the following:

a.      I served as the legal representative in the asbestos case of Garlock Sealing Technologies, LLC, et al., case number 10-31607, in the United States Bankruptcy Court for the Western District of North Carolina and continue to serve as legal representative for the trust established in that case.  The law firm of Caplin & Drysdale, Chtd. served as counsel for the Official Committee of Asbestos Personal Injury Claimants (the "ACC") in that case and represents the Trust Asbestos Committee in the trust established in that case.  In addition, some of the attorneys for members of the ACC in the Garlock case are also either members of the ACC in this case or represent a large number of asbestos claimants in this case.

b.      The Firm represents Truck Insurance Exchange in the asbestos bankruptcy case of Kaiser Gypsum Company, Inc., et al., case number 16-31602, in the United States Bankruptcy Court for the Western District of North Carolina.  I understand that Truck Insurance Exchange is owned by Farmers Insurance Group of Companies.  I have reviewed the list of companies owed by Farmers Insurance Group of Companies at its website and to the best of my knowledge none of those companies are listed on Schedule A or otherwise involved in this case.

c.      I and members of my Firm may be insureds under insurance policies issued in the ordinary course of business by one or more of the Insurance Entities listed on Schedule A.

d.      I and members of my Firm may have, directly or indirectly, investments in publicly held business entities that may include various parties in interest.

5.      Neither the Firm nor any of its members hold any direct equity interest in the Debtor.

6.      Accordingly, insofar as I have been able to ascertain, except as otherwise disclosed herein, neither I, the Firm, nor any member or associate thereof, has any connection with the Debtor, its creditors, or any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.  Further, neither I, the Firm, nor any member or associate thereof, insofar as I have been able to ascertain, represents any interest adverse to that of the estate, the Debtor, or any other party in interest in this case.

7.      My current billing rate is $550.00.  This rate is subject to adjustment, usually on January 1 of each year.   If appointed as Legal Representative in this case, I will seek reimbursement, as allowed pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the rules and orders of this Court, of my fees at my then applicable rate and expenses.

8.      If appointed, it is my intention to engage other professionals to assist me in performing my duties as Legal Representative.  Any such engagements shall be made through application to this Court, and any fees and expenses associated with such engagements shall be subject to this Court's review and approval, after notice and opportunity for hearing.

9.      Based on the information available to me, and except as otherwise described herein, I hold no interest adverse to the Debtor and its estate, or to any other party in interest in the Debtor's case, that would preclude my appointment as Legal Representative and believe that I am a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

10.      I declare under penalty of perjury that the foregoing is true and correct.

This is the 16th day of January, 2019.

*/s/ Joseph W. Grier, III*
Joseph W. Grier, III
Grier  & Crisp, PA
101 North Tryon Street, Suite 1240
Charlotte, North Carolina 28246
704.332-0201
jgrier@grierlaw.com