

**IT IS ORDERED as set forth below:**

**Date: April 17, 2019**

_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

IN RE:

THE FAIRBANKS COMPANY,

    Debtor.

CASE NO. 18-41768-PWB

CHAPTER 11

## ORDER ON APPOINTMENT OF
## FUTURE CLAIMANTS' REPRESENTATIVE

A mass tort bankruptcy case involves two groups of tort claimants: present claimants (individuals who know they have been injured) and future claimants (individuals who do not know of their exposure or injury and, therefore, are

unknown).  A chapter 11 plan can deal with future claims through a so-called "channeling injunction" that prevents them from asserting their claims other than against a trust established under the plan, provided that certain requirements are met.  11 U.S.C. § 524(g).

Present claimants can protect their rights in a chapter 11 case themselves and participate in the bankruptcy process; future claimants cannot.  To protect the interests of unknown future claimants, one of the requirements for a channeling injunction is the appointment of a legal representative "for the purpose of protecting the rights" of future claimants.   11 U.S.C. § 524(g)(4)(B)(i).  This representative is commonly referred to as the "future claimants' representative" (the "FCR").

The Fairbanks Company (the "Debtor"), supported by the Committee of Asbestos Claimants (the "Committee"), has nominated James L. Patton, Jr., to serve as the future claimants' representative.  The United States Trustee objects to Mr. Patton's appointment and has nominated three alternative candidates.  The Debtor and the Committee object to the U.S. Trustee's nominees.

The dispute over the appointment of a future claimants' representative raises both legal and factual issues. The legal issues are: (1) What is the proper procedure for the appointment of a future claimants' representative? and (2) What is the proper standard for appointment of a future claimants'

2

representative?  The factual issue is which individual will best protect the rights of future claimants.

This Order explains the Court's conclusions that: (1) the procedure for the appointment of a future claimants' representative permits nominations from any party in interest in the case and requires the Court's independent inquiry into a proposed representative's qualifications and ability to protect the rights of future claimants; and (2) the proper standard for consideration of a future claims representative is akin to that of a guardian ad litem such that the individual must be not only disinterested and qualified, but also objective, independent, and loyally committed to protecting the interests of future claimants.  The Order then explains why, after an evidentiary hearing at which the Court heard testimony from the nominees and the Debtor's president, the Court has decided to appoint James L. Patton, Jr., as the future claimants' representative.

## I.    BACKGROUND

The Debtor is a small business in Rome, Georgia with 36 employees. It previously manufactured, sold or distributed a line of bronze and iron valves that contained asbestos packing.  [Doc. 3, Declaration of Robert P. Lahre].

For many years, the Debtor has been a defendant in litigation in multiple jurisdictions in which individuals have asserted claims for personal injury and wrongful death as a result of alleged exposure to asbestos-containing products

that it manufactured, sold, or distributed. Since 2005, the Debtor has resolved approximately 2,500 cases and has paid in excess of $30 million to do so. [Doc. 256, Transcript of March 28, 2019 Hearing at 9]. At the time of the filing of its voluntary chapter 11 petition on July 31, 2018, more than 1,300 asbestos claims were pending against it.

The Debtor filed its chapter 11 petition to address present and future asbestos claims through the confirmation of a plan and the issuance of a so-called "channeling injunction" pursuant to 11 U.S.C. § 524(g). The Debtor's objective is to confirm a plan that provides for an asbestos personal injury trust funded by approximately $40 million in insurance proceeds from a settlement with Liberty Mutual Insurance Company and the net proceeds from the sale of its business as a going concern.

The trust will assume liability for all asbestos claims (present and future) and use its assets to resolve them. The process of establishing procedures to resolve and pay present and future claims is one of negotiation among the relevant parties, most importantly the present claimants and the future claimants who must share in the limited pot of funds.

Consistent with these goals, and in accordance with the usual practice in asbestos cases, the Debtor filed an application to appoint a future claimants'

representative and proposed James L. Patton, Jr., for that position.[1]  [Doc. 117].

Mr. Patton is chairman of the law firm Young Conaway Stargatt & Taylor, LLP

and a partner in its Bankruptcy and Corporate Restructuring section.  Mr. Patton

has served as the future claimants' representative in five asbestos bankruptcy

cases.[2]

The U.S. Trustee objects to Mr. Patton's appointment. He contends (1) that

the Debtor is not the appropriate party to nominate a future claimants'

representative and (2) that Mr. Patton may lack the independence necessary for

the job.

The Court held an initial hearing on the Debtor's application to appoint

Mr. Patton on December 18, 2018.  Shortly thereafter, the U.S. Trustee filed his

motion to appoint a future claims representative to which the Debtor and

Committee objected.   [Doc. 157, 178].  The U.S. Trustee later proposed three

individuals – Joseph W. Grier, III, Joe D. Whitley, and Peggy Ableman – as

alternative candidates. [Doc. 202].

---

[1] The Debtor initially sought approval of the appointment of Lawrence Fitzpatrick. [Doc. 33].  The Debtor withdrew this application on November 20, 2018. [Doc. 115].

[2] Mr. Patton has served as the future claimants' representative in *In re Leslie Controls*, Inc., Case No. 10-12199 (Bankr. D. Del); *In re United Gilsonite Laboratories*, Case No. 5:11-bk-02032 (Bankr. M.D. Pa.); *In re Yarway Corp.*, Case No. 13-11025 (Bankr. Del.), and *In re Maremont Corp.*, Case No. 19-10118 (Bankr. D. Del.). He also serves as the future claimants' representative for the Celotex Asbestos Settlement Trust. [Doc. 117 at ¶¶ 14, 15; Doc. 256, Transcript of March 28, 2019 Hearing at 31:7-10].

The Debtor and Committee object to the procedure for appointment of a future claimants' representative advocated by the U.S. Trustee and to the appointment of any of the U.S. Trustee's candidates.

On March 28 and 29, 2019, the Court conducted an evidentiary hearing at which the Court heard testimony from Mr. Patton, Mr. Grier, Ms. Ableman, Mr. Whitley, and Mr. Joseph Lahre, president of the Debtor. The Court took the matter under advisement to consider the factual and legal issues.

Part II sets out the arguments of the parties. Parts III and IV discuss, respectively, the appropriate procedure for appointment of a future claimants' representative and the standards for making the appointment. Part V states the basis for the Court's appointment of Mr. Patton.

## II.   THE PARTIES' POSITIONS

### A.  The Procedure for Appointment of a Future Claimants' Representative

Section 524(g) does not set forth a method or procedure for selecting the future claimants' representative. The parties disagree on how the Court should proceed.

The U.S. Trustee contends that the position of future claimants' representative is unique in the Bankruptcy Code. Unlike other provisions of the Code that permit parties to pick fiduciaries, such as § 701(a) (U.S. Trustee appoints interim trustee), § 327 (the trustee may employ professionals), and

6

§ 1104(d) (U.S. Trustee shall appoint a trustee or examiner), appointment of a future claimants' representative is solely within the discretion of the court.

Because Congress presumably considered the fiduciary role of the future claimants' representative to be of such importance that the Court alone must make the appointment, the U.S. Trustee contends, it is inappropriate for the Debtor (with the support and input of the Committee) to handpick its adversary for plan negotiations.

Further, the U.S. Trustee argues, the same law firms are involved in asbestos bankruptcy cases again and again, creating an incentive for a hand-picked FCR to put future employment ahead of the interests of future claimants. The idea is that the future claimants' representative these lawyers choose will "go along to get along" to the detriment of future claimants in order to be selected for the next case. The U.S. Trustee points to a lack of transparency in plan provisions, diminishing returns for future claimants, and an apparent unwillingness to pursue fraudulent claim practices in other cases as evidence of the risks to future claimants that result from a closed circle of professionals controlling the appointment process.

The best practice, the U.S. Trustee contends, is (1) to give no deference to the Debtor's nominee for future claimants' representative and (2) to permit the

proposal of other candidates so that the Court can make a suitable inquiry into the best individual to appoint.

The Debtor and Committee[3] contend that the Debtor's proposal of a future claimants' representative is consistent with the text of § 524(g) and the customary method for appointment of a future claimants' representative in numerous asbestos bankruptcy cases since its enactment. They explain that, because § 524(g) is a plan provision and the FCR does not exist outside of a plan that proposes a channeling injunction, it is appropriate that the Debtor, as the plan proponent, nominate an FCR for consideration by the Court, just as it proposes all other plan provisions. In any event, the Debtor and the Committee argue, the Court should focus on the identity of the nominee, in this case Mr. Patton, not the party making the nomination.

Finally, the Debtor and Committee contend that time is of the essence in an asbestos bankruptcy case. There is a limited pool of funds and every dollar spent on a protracted search for a future claimants' representative is costly, time-consuming, and untested.

---

[3] Although the Debtor filed the Application to appoint Mr. Patton, the Committee has been zealous in its support of the Debtor's arguments and in its opposition to the U.S. Trustee's nominees. The Court refers to the Debtor's and Committee's arguments collectively.

**B.  The Standard for Appointment of a Future Claimants' Representative**

Neither § 524(g) nor any other provision of the Bankruptcy Code sets forth a standard for the Court to consider when appointing a future claimants' representative. Historically, courts have focused on whether a proposed future claimants' representative is "disinterested" as that term is defined in § 101(14).

The Debtor and Committee contend that, in the absence of express guidance in § 524(g), the only applicable standard for appointment of the future claimants' representative is whether the individual is disinterested.  They assert that as a matter of fact Mr. Patton is disinterested.

Assuming a candidate for the position of future claimants' representative is disinterested, the Debtor and Committee contend the court should appoint the candidate based upon his or her qualifications and experience.  In this respect, they argue that Mr. Patton is highly qualified and has tremendous experience in asbestos bankruptcy cases in general and is particularly knowledgeable about the duties of a future claimants' representative.

The Debtor and Committee emphasize that time and costs are of particular importance in a relatively small case like this one. They argue that the appointment of a future claimants' representative with relatively no prior experience or who may be intractable in negotiations will cause delay and take

money away from both present and future claimants. They conclude that Mr. Patton's experience gives the case the best chance of success.

The Committee specifically rejects the analogy of appointment of a guardian ad litem to appointment of a future claimants' representative.[4] The Committee contends that the role of the future claimants' representative is to represent the interests of future claimants and protect their due process rights. This, it contends, is different from the role of a guardian ad litem who, essentially, substitutes his or her judgment for that of the party he or she protects and can bind such party with her decisions.

In any event, the Committee contends that, even if the Court utilizes a guardian ad litem model, Mr. Patton meets the criteria because he has no adverse interest to the future claimants, he is competent and qualified, and he is dedicated to their best interests.

The U.S. Trustee focuses on the purpose and role of the future claimants' representative for his conclusion that a candidate's appointment requires far more than mere disinterestedness. Because a future claimants' representative represents individuals who cannot represent themselves in a negotiation with adversaries (the present claimants through a committee and, to some degree, the debtor) a candidate must be not only disinterested and qualified, he or she must

---

[4] The Committee addressed the guardian ad litem issue in its pretrial brief. [Doc. 251].

be held to the highest possible standard for a fiduciary such that he or she must be effective, independent and free of the appearance of impropriety.

The U.S. Trustee highlights two areas of concern with respect to independence and the appearance of impropriety.

First, the U.S. Trustee contends that the lack of transparency and evidence of fraudulent claims filed in previous asbestos cases requires that a future claimants' representative be dedicated to more than protecting a future claimant's due process rights. It requires a candidate who is truly independent and effective and who will play a leading role in investigating claims and insuring that appropriate protections exist in plans so that only meritorious claims are paid. This is because the recoveries of future claimants with legitimate claims are reduced by the payment of false or fraudulent ones.

The capability for true independence and advocacy on the part of the future claimants' representatives is questionable, the U.S. Trustee posits, when debtors and present claimants pick the future claimants' representative. The U.S. Trustee suggests that this practice creates a powerful incentive for them to pick a candidate who is unlikely to vigorously litigate against them.

Second, the U.S. Trustee observes that the cycle of appointing future claimants' representatives from a small pool of practitioners and their relationships with firms who may represent present claimants in other cases raises

concerns about actual conflicts and appearances of impropriety.  The U.S. Trustee

contends that a break from "business as usual" is necessary and appropriate.

## III.  PROCEDURE FOR APPOINTMENT OF FUTURE CLAIMANTS' REPRESENTATIVE

The Bankruptcy Code does not set forth a procedure for the appointment

of a future claimants' representative pursuant to 11 U.S.C. § 524(g)(4)(B)(i).  The

Code is silent as to who (if anyone) may nominate a candidate and whether it

requires notice or hearing.  The only explicit instruction is that the court make

the appointment.

The procedures and powers of the trust injunctions developed in the

ground-breaking asbestos cases of Johns-Manville Corp. and UNR Industries,

Inc., were codified  in 1994 in 11 U.S.C. § 524(g).  The legislative history of

§ 524(g) shows that Congress intended § 524(g) to "offer similar certitude to

other asbestos trust-injunction mechanisms that meet the same kind of high

standards with respect to regard for the rights of claimants, present and future, as

displayed in the two pioneering cases [Johns-Manville and UNR Industries]."

H.R. Rep. No. 103-835, at 40 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340.

Using these seminal cases as models, the Court concludes that the

procedure for appointment of a future claimants' representative permits

nominations from any party in interest in the case and contemplates an independent inquiry by the Court.

First the Court concludes that any party may nominate a future claimants' representative. While historically the debtor has performed this function, nothing in the statute mandates that only the debtor may do so. Because a debtor and present claimants have often engaged in prebankruptcy planning and hired an individual to act as the presumptive future claimants' representative in such negotiations, it is not surprising that these parties would seek to have the court appoint their choice. Nothing is fundamentally wrong with this practice.

But in no way is this the exclusive province of the debtor (or the present claimants). To that end, the Court concludes that a debtor's or committee's choice is not entitled to deference.

Indeed, because Congress did not prescribe a nominating process as it did for other professionals and because it provided for the *court* to *appoint* the FCR, the Court concludes that Congress expected a court to exercise its authority and judgment to thoughtfully and thoroughly consider the appointment of a future claims' representative.

Thoughtfulness and thoroughness in the appointment process necessarily contemplates two things: (1) that the Court hold a hearing on a debtor's nominee

at which parties may object; and (2) that parties other than the debtor may nominate candidates.

The Court can think of no unreasonable harm that befalls a debtor or other parties by declining to rubber-stamp a debtor's candidate. While the Court is conscious of the limited resources of mass tort cases and the concerns that front-end litigation will reduce the funds available to both present and future claimants, cost cannot trump process.

## IV. STANDARD FOR APPOINTMENT OF A FUTURE CLAIMANTS' REPRESENTATIVE

In crafting a standard for the appointment of a future claimants' representative, the Court starts with the question that Debtor's counsel posed at the evidentiary hearing: Who would future claimants want to hire to represent them in this case?

Neither § 524(g) nor any other provision of the Bankruptcy Code sets forth a standard for the Court to apply when appointing a future claimants' representative. Historically, courts have focused on whether a future claimants' representative is qualified and is "disinterested" as that term is defined in § 101(14).

The appointment process requires more than a determination that a candidate is qualified and disinterested. A future claimants' representative must

perform fiduciary-like duties in his or her very special role of negotiating for individuals who will be required to participate in a claim-resolution procedure (the trust via the channeling injunction) that they had no say about.

Future claimants, it is safe to surmise, would not be satisfied merely with someone who is "disinterested." They would also want someone who is eminently qualified and knowledgeable.

But they would want much more. Future claimants would want an individual who is objective, reasonable, and fair and who would zealously advocate for them. To some extent these qualities are inherent in being qualified, as the Court would never appoint an individual who could not demonstrate such traits.

Considerations of due process and the statutory provisions of § 524(g) require that a court examine a proposed future claimants' representative's capabilities beyond qualification and disinterestedness.

The essence of due process is the right to participate in judicial proceedings that affect property interests. Because future claimants, by definition, cannot participate in the process of negotiating the terms of the plan, trust, and channeling injunction, they must have a representative.

This person cannot be merely a representative; he or she must be an advocate because other parties (primarily the present claimants) have adverse

interests in the same property. Due process is meaningless if their representative is unwilling to advocate their interests diligently, competently, and loyally.

Section 524(g) implements and enforces this due process concept. Its language establishes that a future claimants' representative must do more than merely provide "adequate" representation.

Section 524(g)(4)(B)(ii) requires the Court to determine that a channeling injunction under a plan is "fair and equitable" with regard to future claimants before confirming it. Because confirmation of a plan and issuance of a channeling injunction depend on compliance with this standard, the terms of both are necessarily a subject of negotiation and litigation in which the FCR must advocate the interests of future claimants.

The "fair and equitable" statutory language is meaningful only if the FCR is an objective and effective advocate for the unknown claimants whose interest the statute protects. Limiting a court's consideration of the appointment of an FCR to whether the candidate is "disinterested" and facially qualified ignores the statutory purpose of the FCR, which is to provide an effective advocate for otherwise unrepresented future claimants.

The Court has sought guidance with respect to the standards for appointment of an FCR by reference to other persons that courts appoint,

including conservators, guardians, guardians ad litem, receivers, special masters, and court-appointed experts. The best and closest model is the guardian ad litem.

The term "guardian ad litem" is a term of art and literally means guardian "for the suit." It is a means by which a court may appoint a person to protect the rights of those persons who cannot represent themselves, such as minors, incapacitated adults, or absent parties. The guardian ad litem is not to be confused with traditional notions of guardianship or conservatorship. In Georgia, for example, those terms are explicitly defined and their duties delineated by statute.[5]

Both state law and federal law contemplate the appointment of a guardian ad litem in certain circumstances. For example, a guardian ad litem may be called upon to assess the best interests of a child in a dependency proceeding;[6] determine whether a proposed compromise of a claim or sale of property is in the

---

[5] O.C.G.A. §§ 29-2-21, 29-2-22 (powers and duties of guardian for a minor); §§ 29-3-21, 29-3-22 (powers and duties of conservator for a minor); §§ 29-4-22, 29-4-23 (powers and duties of guardian for an adult); §§ 29-5-22, 29-5-23 (powers and duties of conservator for an adult).
[6] O.C.G.A. § 15-11-105(a) ("A guardian ad litem shall advocate for a child's best interests in the proceeding for which the guardian ad litem has been appointed.).

best interests of an incapacitated adult;[7] or represent unknown or missing owners of land and their heirs in actions involving mineral rights.[8]

Rule 17(c)(2)[9] of the Federal Rules of Civil Procedure (applicable in bankruptcy proceedings under Rules 7017 and 9014 of the Federal Rules of Bankruptcy Procedure) permits the court to appoint a guardian ad litem to "protect" a minor or incompetent person who is unrepresented in an action.

Federal courts have appointed guardians ad litem in situations that include the deteriorating mental competency of a party in an interpleader and settlement enforcement action;[10] a suit in which the minor children's interests diverge from their co-plaintiff parent;[11] and to review a settlement offer on behalf of a plaintiff who has gone missing prior to trial.[12] Indeed, this Court, pursuant to Bankruptcy Rule 1004.1, appointed a guardian ad litem for a debtor who lacked the mental capacity to understand and manage her financial affairs after concluding "she did

---

[7] O.C.G.A. § 29-5-35(d). ("Upon the filing of the petition [for sale], the court shall appoint a guardian ad litem for the ward.").

[8] W. VA. CODE § 55-12A-5(d) ("The circuit court shall appoint a guardian ad litem for any unknown or missing owner or abandoning owner and their unknown heirs, successors and assigns not known to be alive.").

[9] "A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem--or issue another appropriate order--to protect a minor or incompetent person who is unrepresented in an action."

[10] *AT & T Mobility, LLC v. Yeager*, 143 F.Supp. 3d 1042 (E.D. Cal. 2015).

[11] *McSweeney v. Kahn*, 2008 WL 11335040 (N.D. Ga. 2008); *Geddes v. Cessna Aircraft Co.*, 881 F.Supp. 94 (E.D.N.Y. 1995).

[12] *Burress v. Blake*, 2016 WL 11475018 (E.D. Tex. 2016).

not have a duly appointed representative and because the appointment of a guardian ad litem [was] necessary to protect her interests."[13]

Although the term "guardian ad litem" is undefined, the overarching purpose of the role is to protect the rights of persons in litigation who cannot represent themselves. This, of course, is exactly what §524(g)(4)(B)(i) expects a future claimants' representative to do.

Future claimants are substantially similar to minors or incapacitated adults in that they are incapable of representing themselves. If one cannot represent oneself in a procedure that will determine property rights then due process rights have not been protected. And the property rights of future claimants are very real: they will share in the assets of an asbestos trust created in a case they do not know involves them for injuries that have not yet manifested.

The Committee distinguishes a future claimants' representative from a guardian ad litem on the ground that a guardian ad litem can bind the person he or she represents whereas a future claimants' representative cannot bind future claimants. Whether or not this distinction is accurate (and the Court does not conclude it is), it is a distinction without a difference. An FCR cannot "bind" a specific future claimant in the usual sense of the word, but a confirmed plan and channeling injunction surely will. Just as a guardian ad litem must represent the

---

[13] *In re Benson*, 2010 WL 2016891 at *2 (Bankr. N.D. Ga. 2010).

interests of a ward in litigation determining the ward's rights and duties, an FCR must advocate on behalf of unknown future claimants in the negotiation of the terms of the plan, trust, and channeling injunction and in the confirmation process to protect future claimants' rights and give them the best possible opportunity to recover.

In summary, a future claimants' representative effectively undertakes the role of a guardian ad litem. Appointment of an FCR thus involves the same considerations as appointment of a guardian ad litem.

In view of the foregoing, the Court concludes that the standard for appointing a future claimants' representative requires that the individual not only be disinterested and qualified; the future claimants' representative must also be capable of acting as an objective, independent, and effective advocate for the best interests of the future claimants. The Court must be satisfied that, like a guardian ad litem, an FCR will provide representation that is diligent, competent, and loyal.

The United States Trustee expresses three specific concerns regarding standards for appointment of a future claimants' representative that do not fit squarely within these standards.

First, the U.S. Trustee has substantial concerns about the appearance of impropriety or partiality in the appointment process, specifically where a debtor

nominates an individual to serve as the future claimants' representative who provided prepetition services and received prepetition compensation.

The Court shares this concern, and a court properly takes it into account in appointing an FCR. At the same time, the Court cannot conclude that a debtor's proposal of a candidate, in and of itself, is improper or disqualifies the debtor's candidate. And although prepetition relationships or compensation of a candidate on the surface suggest the possibility of an actual conflict and may raise concerns, they do not alone demonstrate a lack of independence or partiality.

These are issues of fact that, when thorough procedures exist, can be brought to light. It is important to note that this is not a prepackaged bankruptcy case and none of the nominated future claimants' representatives were hired to engage in any prepetition negotiations with the Debtor, insurer, or Committee in contemplation of appointment as a future claimants' representative.

A second, related concern of the U.S. Trustee is that a "cottage industry" operates in mass tort bankruptcy cases in which the same professionals representing the same or similarly situated parties appear. As discussed earlier, the danger is that the FCR is part of a closed group and has an incentive to advocate (or to limit advocacy) so that the FCR remains in the group at the expense of future claimants. A future claims representative who "rocks the boat" through aggressive advocacy may not be in the next boat.

It is true that the same professionals regularly appear in the same roles in many mass tort cases, and it is true that this raises appearance of impropriety problems that the U.S. Trustee identifies. Nevertheless, because one can expect clients to choose professionals with experience and expertise, it is not surprising that cases often involve the same professionals. Experience and expertise should not be discarded unless the facts of the case, as developed in a thorough appointment process, raise concerns about the capabilities of particular candidates.

Finally, the U.S. Trustee raises concerns about a lack of transparency in plan negotiations and the filing, examination, and payment of claims against the trust.

The U.S. Trustee's concerns about transparency and distributive procedures are legitimate, but it is not appropriate to address them in the context of appointment of a future claimants' representative. The Court is not currently in a position to determine what distributive provisions are in the best interests of future claimants. Because the Court cannot determine that question at this stage, it should not properly select an FCR based on predictions about how a candidate would approach these issues.

# V. APPOINTMENT OF JAMES L. PATTON, JR. AS FUTURE CLAIMANTS' REPRESENTATIVE IN THIS CASE

As Part III explains, the procedure for appointment of a future claimants' representative permits nominations from any party in interest in the case and contemplates an independent inquiry by the Court.

The Court followed that procedure in this case.  As a result, the Court was presented with four outstanding candidates for future claimants' representative. The Court hopes that the process brought forth important dialogue among the parties on significant legal issues and that it expanded the pool of candidates for future cases.[14]  Whether it did or did not, the Court is satisfied that the Court fulfilled its role in § 524(g)'s unique appointment process to protect the interests of future claimants who cannot choose their own advocate.

As Part IV discusses, the Court concludes that the appointment of a future claimants' representative requires considerations beyond disinterestedness.  The Court must also consider the qualifications of the nominee, as well as his or her objectivity, independence, and advocacy in insuring that the terms of a confirmed plan are "fair and equitable" to the future claimants.  The Court must be satisfied

---

[14] The statute does not require a court to select an FCR from candidates that the parties propose.  *Cf. AT & T Mobility, LLC v. Yeager,* 143 F.Supp.3d 1042 (E.D. Cal. 2015) (court rejected three nominees put forth by plaintiff's spouse for appointment as guardian ad litem).

that the FCR, like a guardian ad litem, will represent and protect the interests of future claimants diligently, competently, and loyally.

The parties presented four impressive candidates. All of them satisfy the "disinterestedness" test, all are qualified, and the Court is satisfied that each of them would provide representation of future claimants in accordance with the standards set forth in Part IV.

Although the parties vigorously dispute whether one candidate or another has the necessary bankruptcy or mass tort experience, the Court is confident that any of them could do the job for two reasons. First, a great lawyer (and their experience and reputation establish that each of them is a great lawyer) can take whatever case walks through the door and handle it with expertise and professionalism. Second, a future claimants' representative does not operate alone; he or she has expert counsel to assist.

The Court has carefully considered the four candidates under the standards discussed in Part IV and without giving any weight to the party who proposed them. As the Court explains below, the Court has concluded that it is appropriate to appoint James L. Patton, Jr., as the future claimants' representative.

The Court bases its choice on several considerations. First, Mr. Patton has significant experience in mass tort bankruptcy cases. In particular, he has served as a future claimants' representative in five other cases.

Second, his experience brings with it an ability to expedite and prioritize issues in order to minimize costs and maximize returns.  Although the U.S. Trustee is critical of Mr. Patton's hourly rate, the price tag reflects considerable experience and expertise.  It might take many hours for a newcomer to an asbestos bankruptcy case, with a lower hourly rate than Mr. Patton, to study and digest material issues and to review and understand complex plan, trust, and injunctive provisions, whereas Mr. Patton would immediately understand the issues and be able to focus on critical provisions of the documents.  Even at his higher rate, the cost would be less.  The Court is persuaded that Mr. Patton will likely be more economical in the long run.

Third, Mr. Patton's testimony demonstrated that he has the skills and intent to advocate on behalf of future claimants and protect their interests. In this regard, the Court has considered – and shares – the U.S. Trustee's concerns about the appearance of impropriety arising from the Debtor's nomination of Mr. Patton and his involvement in numerous asbestos bankruptcy cases.

The Court concludes from the evidence, particularly Mr. Patton's testimony, that these concerns do not disqualify him or preclude his appointment. The Court is satisfied that the parties in other cases – and the Debtor here – have selected Mr. Patton on the basis of his proven abilities, not because they expect him to base his advocacy on what will most likely result in recommendation for

a future position.  Importantly, the Court is also convinced that Mr. Patton will bring the independent and effective advocacy to the representation of future claimants without regard to how it may affect his prospects for a future engagement.

The Court emphasizes that the other candidates also have these characteristics.  The Court, however, must select one who, in its judgment, will be the best representative for future claimants.  In the circumstances of this case, Mr. Patton's experience and expertise make him the best choice.

The U.S. Trustee is to be credited for his advocacy on these issues. Although it has led to some consternation on the part of other parties, the U.S. Trustee is fulfilling his statutory role in protecting the bankruptcy process from fraud and abuse.  And the Court notes the anecdotal evidence that indicates that fraud and abuse in the system does exist, although nothing indicates that it is present in this case.[15]

---

[15] Mr. Patton and Ms. Ableman testified as to certain instances of abuse at the evidentiary hearing.

Mr. Patton testified, "There are law firms who have been barred from filing claims because they failed to pass [muster]. Typically what happens is the audit then trigger – well, will trigger – and this sounds like it happens a lot.  This is actually a very low level problem in terms of its frequency, but we have had occasions where a law firm will have a claim pulled for audit.  They won't respond or they'll respond in an unsatisfactory way.  Their responses will trigger a more focused audit of that firm an in some cases the firm gets barred." [Doc. 256, Transcript of March 28, 2019 Hearing at 56:2-13].

Ms. Ableman testified regarding her experience as a Delaware Superior Court Judge, "But one of the last cases that I tried involved a plaintiff who had failed to disclose the fact that he – actually it was his mother I think had died of mesothelioma – but he was representing the estate. And he had failed to disclose that he had received payment from

In comparison to other asbestos bankruptcy cases, this is a small one. But it is important to present claimants, future claimants, and the 36 employees of the Debtor in a small town. Settlement trust negotiations among the various

approximately 20 trusts. Even though we had a case order – a standing order requiring that, that be disclosed and I didn't find out about it until the morning that the trial was to begin. So as a result I got a taste of what playing fast and loose with the truth can be in this type of litigation. And I soon learned that there is a big disconnect between the transparent – between the asbestos tort system, which is the lawsuits in the courtroom, and the asbestos trust claiming system because the two don't seem to know what each other is doing. And as a consequence there's been an awful lot of fraud and misrepresentations because the lawyers can do it and they can get away with it." [Doc. 256, Transcript of March 28, 2019 Hearing at 177: 13 – 178:5].

The court in *In re Garlock Sealing Technologies, LLC*, 504 B.R. 71, 84 - 86 (Bankr. W.D. N.C. 2014), described problems in that case:

> In 15 settled cases, the court permitted Garlock to have full discovery. Garlock demonstrated that exposure evidence was withheld in each and every one of them. These were cases that Garlock had settled for large sums. The discovery in this proceeding showed what had been withheld in the tort cases—on average plaintiffs disclosed only about 2 exposures to bankruptcy companies' products, but after settling with Garlock made claims against about 19 such companies' Trusts. . . . These fifteen cases are just a minute portion of the thousands that were resolved by Garlock in the tort system. And they are not purported to be a random or representative sample. But, the fact that each and every one of them contains such demonstrable misrepresentation is surprising and persuasive. More important is the fact that the pattern exposed in those cases appears to have been sufficiently widespread to have a significant impact on Garlock's settlement practices and results. Garlock identified 205 additional cases where the plaintiff's discovery responses conflicted with one of the Trust claim processing facilities or balloting in bankruptcy cases. Garlock's corporate parent's general counsel identified 161 cases during the relevant period where Garlock paid recoveries of $250,000 or more. The limited discovery allowed by the court demonstrated that almost half of those cases involved misrepresentation of exposure evidence. It appears certain that more extensive discovery would show more extensive abuse. But that is not necessary because the startling pattern of misrepresentation that has been shown is sufficiently persuasive.").

*See also*, Mark D. Plevin, Leslie A. Epley, Clifton S. Elgarton, *The Future Claims Representative in Prepackaged Asbestos Bankruptcies: Conflicts of Interest, Strange Alliances, and Unfamiliar Duties for Burdened Bankruptcy Courts*, 62 N.Y.U. Ann. Surv. Am. L. 271 (2006).

interested parties will be complex and will require an individual who can bring a level of expertise and experience to the table on behalf of future claimants. This is especially significant where the failure to confirm a plan will likely result in no funds for future claimants because present claimants will exhaust all funds in a race to the courthouse.

The considerations require the experience and expertise that Mr. Patton has. The Court is confident that future claimants, if asked who they would hire in this case, would select Mr. Patton.

The U.S. Trustee at the evidentiary hearing expressed the concern that future claimants should not have to wonder whether the selection of the future claimants' representative was tainted because of the concerns the U.S. Trustee properly raised. The Court is also satisfied that, because of the thorough and robust procedure in which the parties engaged, future claimants will not question the process by which the Court appointed him as their representative and will be satisfied that the Court selected the best candidate from several qualified ones.

## VI. CONCLUSION

Based on, and in accordance with the foregoing, it is hereby

**ORDERED** that James L. Patton is appointed as the future claimants' representative in this case.

### END OF ORDER

**Distribution List**

Kevin C. Maclay
Caplin & Drysdale, Chartered
Suite 1100
One Thomas Circle, NW
Washington, DC 20005

Leslie M. Pineyro
Jones and Walden, LLC
21 Eighth Street, NE
Atlanta, GA 30309

William L. Rothschild
Ogier, Rothschild & Rosenfeld, PC
P. O. Box 1547
Decatur, GA 30031

Paul M. Singer
Reed Smith LLP
Suite 200
225 Fifth Avenue
Pittsburgh, PA 15222

Luke A. Sizemore
Reed Smith LLP
Suite 1200
225 Fifth Avenue
Pittsburgh, PA 15222

Martin P. Ochs
Office of the U. S. Trustee
362 Richard Russell Federal Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303

James L. Patton, Jr.
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801