

**IT IS ORDERED as set forth below:**

Date: September 9, 2020

_____

**Paul W. Bonapfel**
U.S. Bankruptcy Court Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| In RE: | ) | |
| | ) | Case No. 18-41768-pwb |
| THE FAIRBANKS COMPANY, | ) | |
| Debtor. | ) | Chapter 11 |
| _____ | ) | |
| | ) | |
| THE FAIRBANKS COMPANY, | ) | |
| Objector, | ) | |
| vs. | ) | Contested Matter |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | Objection to Claim |
| COMPANY OF PITTSBURGH, | ) | |
| PENNSYLVANIA, | ) | |
| Claimant. | ) | |
| _____ | ) | |

**ORDER ON OBJECTION TO CLAIM OF
NATIONAL UNION FIRE INSURANCE COMPANY**

National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"),

Liberty Mutual Insurance Company ("Liberty Mutual") and other insurance companies provided

insurance to The Fairbanks Company ("Fairbanks"), the chapter 11 debtor, that covered its liability during various policy terms for personal injury and wrongful death to individuals exposed to asbestos-containing products that Fairbanks manufactured and sold prior to 1984.

An asbestos claimant's exposure to asbestos cannot easily be attributed to a time period covered by a particular insurance policy, and the continuous exposure that results in injury may trigger coverage under more than one policy. This "progressive injury" situation leads to disputes between the insured and its insurers, and among the insurers themselves, with regard to the allocation of liability among the insurers.

Fairbanks, National Union, Liberty Mutual, and the other insurance companies have been litigating such disputes with regard to coverage of Fairbanks in the United States District Court for the Southern District of New York (the "Coverage Court" and the "Coverage Action").[1] In March 2016, the Coverage Court entered an order resolving some issues on motions for summary judgment.[2] With regard to National Union's liability, the Coverage Court determined that, as a matter of Georgia law, the "pro rata" approach to allocation of its liability (as opposed to the "all sums" approach) applied under the terms of the National Union policies.[3]

Prior to the Coverage Court's order, National Union had paid more than the amount of contractual liability under its policies as calculated under the "pro rata" approach. After Fairbanks filed its chapter 11 case on July 31, 2018, National Union timely filed its proof of

---

[1] *Liberty Mutual Insurance Company, Plaintiff, v. The Fairbanks Company, Defendant/Plaintiff, v. National Union Fire Insurance Company of Pittsburg, Pennsylvania; Liberty Mutual Insurance Company; Fireman's Fund Insurance Company; AXA Royale Belge; The Hartford Insurance Company; Traveler's Casualty & Surety Company, Defendants,* Civil Action Nos. 13-cv-3755 (JGK) and 15-cv-1141 (JGK).
[2] 170 F. Supp. 3d 634 (E.D.N.Y. 2016) (Koeltl, J.).
[3] *Id.* at 651.

2

claim for reimbursement of all sums it paid out prior to the filing that were above and beyond its responsibility under the policies.[4] Fairbanks has objected to the claim. [Doc. No. 377].

National Union and Fairbanks filed a stipulation of facts and material documents.[5] At the evidentiary hearing on the objection, the Court gave the parties an opportunity to supplement the record with additional evidence necessary for a proper determination of the issues.[6] No one has filed anything further.

This Order constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P., 52(a), *applicable under* Fed. R. Bankr. P. 7052 and 9014(c). The objection to National Union's claim is a "core proceeding" under 28 U.S.C. § 157(b)(2)(B). The United States District Court for the Northern District of Georgia has jurisdiction over it. 28 U.S.C. § 1334(b). This Court has authority to hear and determine it under 28 U.S.C. § 157(b)(1) and N.D. Ga. Local Rule 83.7.[7]

---

[4] Parties file proofs of claim in this case with a claims agent. See Order entered September 12, 2018. [Doc. No. 76]. A copy of the proof of claim is attached as Exhibit A to the objection Fairbanks filed to it. [Doc. No. 377-1].

[5] Stipulation of the Debtor and National Union Fire Insurance Company of Pittsburgh, Pennsylvania for Evidentiary hearing Scheduled for June 30, 2020 (hereinafter "Stip."). [Doc. No. 532].

Stipulated exhibits are listed in Part A of the Stipulation. The stipulated facts are in Part C, which begins on page 3.

[6] Tr. 35-41, 99-103.

[7] National Union does not consent to this Court's entry of a final order or judgment. Stip. ¶ 23. If this is not a core proceeding, the Court's authority is limited to hearing the objection to National Union's proof of claim, and the Court must submit proposed findings of fact and conclusions of law to the district court for its *de novo* review. 28 U.S.C. § 157(c)(1). To the extent that this is not a core proceeding, this Court's findings of fact and conclusions of law constitute the Court's proposed findings of fact and conclusions of law in accordance with 28 U.S.C. § 157(c)(1). See *Executive Benefits Insurance Agency v. Arkison,* 573 U.S. 25 (2014).

## I. Facts

National Union provided two policies of insurance to Fairbanks for general commercial liabilities that together covered a period of 13 months, from June 1, 1986, to July 1, 1987. Each policy contains a "Deductible Liability Insurance" endorsement. (Stip. ¶¶ 1, 2; Ex. 1 at 18, Ex. 2 at 17[8]).

Fairbanks began receiving claims against it as a result of its manufacture and distribution of products containing asbestos in 2002. National Union began making payments under the policies on account of these claims in 2004. (Stip. ¶¶ 3, 4). National Union defended under a reservation of rights, set forth in a letter dated June 10, 2004. (Ex. 3). The reservation of rights does not state a reservation of rights to recover defense costs or reimbursement of any payments under the policies.[9]

In 2005, some of Fairbanks's insurers entered into an interim cost-sharing agreement for defense and indemnity costs. In 2009, National Union began participating in a cost-sharing agreement with the other insurers. Fairbanks did not participate in either agreement. Under these agreements, all of the costs of defending and indemnifying Fairbanks were apportioned among National Union and the other participating insurers. (Stip. ¶¶ 5,6).

---

[8] The Court refers to exhibits attached to the stipulation [Doc. No. 532] as "Ex." Each Exhibit is docketed as a separate entry on the Court's Electronic Case Filing system; the number of the Exhibit corresponds to the ECF reference to that entry. A reference to a page is to the page number of the document in the ECF filing. Thus, for example, "Ex. 1 at 17" refers to page 17 of ECF Document No. 532-1. Exhibits 1 and 2 are copies of the insurance policies.

[9] See Debtor's Brief in Opposition to Allowance of National Union Fire Insurance Company of Pittsburgh, Pennsylvania's Proof of Claim [Doc. No. 527] (hereinafter "Fairbanks Brief") at 18-19.

In 2013, one of the participating insurers (commonly referred to as "Lumbermens") entered into a liquidation proceeding in Illinois. (Stip. ¶ 8). Accordingly, it no longer participated in the cost-sharing.

In June 2013, Liberty Mutual filed a declaratory judgment action in the Southern District of New York against Fairbanks to obtain a determination of its allocable share of costs and indemnification. Fairbanks then filed a complaint in a Georgia state court against Liberty Mutual, National Union, and other insurers. The state court action asserted breach of contract claims against National Union and Liberty Mutual and sought a declaratory judgment against all insurer defendants regarding its claims for coverage. After removal of Fairbanks's complaint to the United States District Court for the Northern District of Georgia and transfer of it to the United States District Court for the Southern District of New York, both were pending before District Judge John G. Koeltl. (Stip. ¶¶ 9-11, 14).

On January 27, 2014, and February 18, 2014, National Union sent additional letters to Fairbanks asserting reservations of its rights. (Ex. 5, Ex. 6). These letters included a reservation of National Union's rights to recoup defense and indemnity payments for which it ultimately might be found to have no obligation.[10]

On March 22, 2016, the Coverage Court issued the summary judgment order referenced above.[11] The cost-sharing agreement ceased in mid-2016 due to a decision by the New York Court of Appeals in *In re Viking Pump, Inc., and Warren Pumps, LLC,* 27 N.Y.3d 244, 52 N.E.3d 1144 (2016), that made the "all sums" approach applicable to the Liberty Mutual

---

[10] See Fairbanks Brief at 19.
[11] 170 F. Supp. 3d 634 (E.D.N.Y. 2016) (Koeltl, J.). A copy of the order is attached to the Stipulation as Exhibit 11. [Doc. No. 532-11].

5

policies. (Stip. ¶ 17).[12] The Coverage Court has stayed the Coverage Action due to the automatic stay of § 362(a) arising as a result of Fairbanks's chapter 11 filing. [Stip. ¶ 19].

Fairbanks and Liberty Mutual have agreed to a settlement of their disputes. [Stip. ¶ 20]. Fairbanks filed its chapter 11 petition to address present and future asbestos claims through the confirmation of a plan and the issuance of a so-called "channeling injunction" pursuant to 11 U.S.C. § 524(g). Its objective is to confirm a plan that provides for an asbestos personal injury trust funded by approximately $ 40 million in insurance proceeds from the settlement with Liberty Mutual Insurance Company and the net proceeds from the sale of its business as a going concern.[13] The parties have not yet asked the Court to approve the settlement, and Fairbanks has not yet filed a chapter 11 plan.

National Union's proof of claim is for reimbursement for the sums it paid out prior to the chapter 11 filing that it contends are above and beyond its responsibility under the policies. [Stip. ¶ 21]. The claim has two components.

First, National Union asserts a claim of $ 985,077.29 as the difference between what it should have paid in indemnity under the pro rata approach to the calculation of its liability and what it did pay. [Stip. ¶ 37].[14]

The second part of National Union's claim is for overpayment of defense costs. National Union estimates that the difference between what it paid and what it should have paid based on application of the pro rata approach to defense costs is $ 249,235.03. [Stip. ¶ 38].

---

[12] After the *Viking Pump* decision, the Coverage Court ruled that the all sums allocation method applied to the umbrella policies issued by Liberty Mutual. 2016 WL 4203543 (S.D.N.Y. 2016) (Koeltl, J.). A copy of the order is attached to the Stipulation as Exhibit 12. [Doc. No. 532-12].
[13] *In re The Fairbanks Company,* 601 B.R. 831, 834 (Bankr. N.D. Ga. 2019).
[14] Paragraphs 25 through 37 of the Stipulation explain the basis for National Union's calculation, which Exhibit 9 [Doc. No. 532-9] contains. It is based on assumptions that Fairbanks does not share. Stip. ¶ 26.

Fairbanks disputes National Union's calculations.  At the evidentiary hearing, the Court stated that it would first determine the liability of Fairbanks on the claims National Union asserts and then conduct further proceedings, if necessary, to determine the amount of the claims.[15]

## II.  Discussion

National Union cannot identify any provision in the policies that gives it the right to seek reimbursement of amounts that it overpaid (Tr. 67-81), other than a requirement in § 4 of the Deductible Liability Endorsements for Fairbanks to reimburse it if it pays any part of the deductible amount to settle a claim.  (Ex. 1 at 18; Ex. 2 at 17).  The Court will address the two arguments National Union advances to support its reimbursement claims and will then consider its Fairbanks's liability for deductible amounts.

### A.  Reimbursement Based on Implied Contract or Unjust Enrichment Theory

National Union asserts that, under Georgia law, when an insurer defends tort claims under a reservation of rights and pays more than the insurance policy requires, the insurer is entitled to reimbursement based on an unjust enrichment or implied in fact contract theory.[16] National Union argues that *Illinois Union Insurance Co. v. NRI Construction, Inc.,* 846 F. Supp. 2d 1366 (N.D. Ga. 2012), establishes this principle.

---

[15] Tr. 99-100.
[16] National Union's Brief in Support of Allowance of Proof of Claim [Doc. No. 523] (hereinafter "National Union Brief") at 4-5.

Fairbanks contends, among other things,[17] that *Illinois Union* is not a binding ruling on Georgia law and that this Court should follow the better rule in other cases that an insurer has no right to reimbursement.[18]

Even if the Court follows *Illinois Union,* Fairbanks continues, the ruling permits reimbursement only if the insurer timely and explicitly reserved its rights and provided specific and adequate notice of the possibility of reimbursement.[19] Fairbanks contends that National Union did not make an explicit reservation of its reimbursement rights until early 2014 and that the 2014 reservation was not timely.  Consequently, Fairbanks contends that National Union has no rights to reimbursement under the ruling of the Georgia Court of Appeals in *Georgia Interlocal Risk Management Agency v. City of Sandy Springs,* 337 Ga. App. 340, 788 S.E. 2d 74 (2016).[20]

National Union's argument relies on *Illinois Union Insurance Co. v. NRI Construction, Inc.,* 846 F. Supp. 2d 1366 (N.D. Ga. 2012).  There, the insurer disputed coverage of a claim against the insured but defended under a reservation of rights.  The insurer specifically reserved

---

[17] Fairbanks points out that the Coverage Court's determination that the pro rata allocation applies to the National Union policies is not a "final, dispositive determination of the allocation issue. Fairbanks Brief at 11.  To the extent that Fairbanks requests this Court to revisit this issue, the Court declines to do so.  See Tr. 44.

[18] Fairbanks Brief at 14-17.

[19] Fairbanks Brief at 18-20.

[20] Fairbanks Brief at 19-21.  Fairbanks also argues that the reservation of its rights to maintain that its share of defense and indemnity costs "remains zero" in a letter to National Union in December 2013, notwithstanding any subsequent reservation of rights by National Union (Ex. 4), precludes an implied agreement for reimbursement.  Fairbanks Brief at 20.  In view of the Court's disposition of the indemnity and defense costs reimbursement claims on other grounds, the Court does not address this issue.

8

its right "to seek recoupment of any expenses incurred in the defense." *Id.* at 1369. The insurer sought reimbursement of its defense costs after the court concluded that coverage did not exist.[21]

The insured argued that the court should reject the request for reimbursement because the policy contained no provision granting a reimbursement right to the insurer. The insured asserted that it had a right to reimbursement of defense costs under unjust enrichment and implied contract theories.

The court discussed the national split of authority on the question of whether an insurer has a right to reimbursement of defense costs when it is later determined that the insurer had no duty to defend. The majority rule, the court explained, permits reimbursement "where the insurer (1) timely and explicitly reserves its rights to recoup the costs; and (2) provides specific and adequate notice of the possibility of reimbursement," even in the absence of an express agreement by the insured. *Id.* at 1374.[22] The court noted that the question was a matter of first impression in Georgia, *id.* at 1374, and concluded that Georgia case law supported the majority view. *Id.* at 1376-77.

The *Illinois Union* court concluded that the insurer had timely reserved its right to recoup defense costs and had provided specific and adequate notice of the possibility of reimbursement. The court ruled, therefore, that the insurer was entitled to reimbursement of its defense costs under either an unjust enrichment or implied in fact contract theory.

The same issues came before the Georgia Court of Appeals four years later in *Georgia Interlocal Risk Management Agency v. City of Sandy Springs,* 337 Ga. App. 340, 788 S.E.2d 74

---

[21] *Illinois Union* does not indicate whether the insured had made any payments on the underlying claim, and the ruling does not involve that issue.

[22] The court cited *United National Insurance Co. v. SST Fitness Corp.* 309 F.2d 914, 919 (6th Cir. 2002).

(2016). The insurer[23] had defended the underlying action under a reservation of rights to contest coverage, but it did not reserve the right to recoup defense costs. About four years later, the insurer sent a revised reservation of rights letter that, for the first time, explicitly reserved the right to recover future defense costs. *Id.* at 342, 788 S.E.2d at 76.

The insurer argued that, under *Illinois Union,* it had the right to reimbursement of defense costs incurred after issuance of its second reservation of rights letter. The court concluded that the insurer could not recover defense costs because the reservation of rights in the second letter was not timely. *Id.* at 346, 788 S.E.2d at 79. The court explained that the fact that the insurer limited its request in the second letter to future costs "does not change the analysis as to whether it acted reasonably promptly in reserving the right in the first instance. . . . If [the insurer] actually has a right to recoup defense costs in this case, then such a right would have existed in 2009, four years before it attempted to reserve that right." *Id.* at 347, 788 S.E.2d at 79-80.[24]

The ruling in *Georgia Interlocal Risk Management Agency v. City of Sandy Springs,* 337 Ga. App. 340, 788 S.E.2d 74 (2016), controls the question of National Union's rights to reimbursement of indemnity payments and defense costs. National Union began its defense in 2004 under a reservation of rights that did not explicitly reserve its rights to reimbursement of indemnity payments and defense costs. Its later reservation of rights for those items did not

---

[23] The court noted that Georgia Interlocal Risk Management Agency is a risk-sharing arrangement that permits municipalities to contract to pool their general liability risks and that it is not technically not an insurance company or insurer. 337 Ga. App. 74, 788 S.E.2d at 75. For clarity and convenience, this Court refers to the Agency as the "insurer."

[24] The court expressly declined to decide whether the insurer had a right to recoup defense costs. 337 Ga. App. at 347, n. 6, 788 S.E.2d at 79.

occur until 2014. The reservation in 2014 was not timely, and it cannot be effective for any indemnity payments or defense costs, even those that occurred after its issuance.[25]

The Court concludes, therefore, that National Union is not entitled to reimbursement of indemnity payments or defense costs based on its reservation of rights.[26]

**B.  Reimbursement Based On Subrogation Rights**

National Union also asserts that its subrogation rights under the policies give rise to a right of reimbursement. National Union's reasoning proceeds as follows:[27]

1.  National Union paid more than its proper share of indemnity payments and defense costs that it was responsible for under the "pro rata" ruling in the Coverage Action (the "Excess Amount").

2.  Liberty Mutual is responsible for "all sums" under rulings in the Coverage Action. As such, its obligations include the Excess Amount, and it should have paid that amount.

---

[25] National Union contends that the Coverage Court's ruling determined this issue. Tr. 59-65. National Union relies on a portion of the ruling that states, "The insurers entered into a cost-sharing arrangement in 2005 that excluded Fairbanks but did so under a full reservation of rights. Fairbanks acknowledged this reservation of rights." 170 F. Supp. 3d at 653 (Citations to record omitted).

At the evidentiary hearing, this Court concluded that this statement did not appear essential to the ruling, that it did not address the issue here, and that it did not establish that National Union had made a timely and explicit reservation of reimbursement rights. The Court gave National Union the opportunity to supplement the record to provide evidence with regard to National Union's reservation of rights to which the Coverage Court referred. Tr. 63-66. National Union has provided no further evidence.

[26] Because Fairbanks prevails on this issue, the Court need not consider Fairbanks's arguments that *Illinois Union* erroneously interpreted Georgia law and that this Court should conclude under the facts here that National Union has no rights to reimbursement of indemnity payments or defense costs under Georgia law in the absence of a contractual right in the policies to do so. Fairbanks Brief at 13-18. The Court notes that the Court of Appeals of Georgia similarly declined to consider whether *Illinois Union* is a correct application of Georgia law. 337 Ga. App. at 347, n. 6, 788 S.E.2d at 79.

[27] National Union Brief at 6; Tr. 71-80).

11

3. Fairbanks has a claim against Liberty Mutual to recover the Excess Amount that Liberty Mutual should have paid.

4. Fairbanks has settled its claims with Liberty Mutual. The settlement proceeds are property of the estate.

5. Because of its subrogation right, the proceeds that Fairbanks receives from the Liberty Mutual settlement are removed from the estate and are instead payable to National Union. National Union cites *In re Kaiser Aluminum Corp.,* 2004 WL 97658 (Bankr. D. Del. 2004), to support this proposition. Under the principles of *Kaiser Aluminum,* National Union explains, Fairbanks has a right to get money from Liberty Mutual for the Excess Amount, Fairbanks is getting money from Liberty Mutual pursuant to the proposed settlement, and National Union is entitled to a portion of that money equal to the Excess Amount rather than Fairbanks. (Tr. 76, at 8-15). National Union thus asserts a claim against an estate asset – a portion of the Liberty Mutual settlement proceeds that includes money on the claim of Fairbanks for the Excess Amount to which National Union is subrogated. (Tr. 73, at 5-25).

6. The remedy of reimbursement against the estate and the remedy of subrogation against the assets of the estate are indistinguishable "because they both flow to the assets of the bankruptcy estate." (Tr. 73, at 18-23). In other words, the subrogation remedy and the reimbursement remedy are "functionally the same" in the circumstances here. (Tr. 78, at 22-25). National Union is concerned that the settlement between Fairbanks and Liberty Mutual or a plan that Fairbanks proposed in this case may eliminate its subrogation rights. (Tr. 73, at 11-15).

7. The facts that the policies do not provide a contractual right to reimbursement based on National Union's subrogation rights and that National Union has a claim against Liberty Mutual do not preclude it from asserting a reimbursement claim based on unjust enrichment

under the principles of *Illinois Union Insurance Co. v. NRI Construction, Inc.,* 846 F. Supp. 2d 1366 (N.D. Ga. 2012). (Tr. 80, at 10-17).

National Union cites no authority for the proposition that, as a matter of Georgia insurance law, the existence of a subrogation right gives rise to an affirmative claim against the insured based on the subrogated claim. Indeed, an insurer's ability to assert an affirmative claim against its insured based on a subrogation right would defeat the fundamental purpose of the insurance.

The insured expects indemnification against a covered loss. Subrogation permits the insurer to recover some or all of the loss from third parties who are responsible for the loss and against whom the insured has a claim. Turning a subrogation right into an affirmative claim puts the insured in the position of having to recover its loss from the third parties. This is not how insurance or subrogation works.

Unjust enrichment principles cannot change this result. Unjust enrichment does not occur when an has no affirmative liability with regard to a claim it has and to which the insurer is subrogated. The insurer still retains the right, by subrogation, to assert the insured's claim.

If this analysis does not apply under Georgia law when one insurer pays a claim for which it is not liable and another insurer is, National Union has not provided any authority that so states. National Union relies on *Illinois Union* to support an unjust enrichment theory, but as just noted, unjust enrichment cannot apply because National Union still has its rights with regard to the subrogated claim.

Although National Union's claim of a right of reimbursement arising from its subrogation rights thus fails as a matter of Georgia insurance law, National Union contends that the Liberty Mutual settlement and the terms of a potential plan in this case require allowance of a

13

reimbursement claim against Fairbanks.  Its claim for reimbursement against the estate, it argues, is functionally the same as its subrogated claim against Liberty Mutual.

National Union bases its reimbursement claim on the proposition that its subrogation claim is not property of the estate but that proceeds from that claim are coming into the estate under the Liberty Mutual settlement.  Because National Union has the right against the estate to claim those proceeds, it asserts entitlement to a reimbursement claim against the estate as a functionally equivalent remedy.

National Union relies on *In re Kaiser Aluminum Corp.,* 2004 WL 97658 (Bankr. D. Del. 2004),  but *Kaiser Aluminum* is fundamentally different from the situation here.

In *Kaiser,* an explosion occurred at the debtor's plant with significant injuries to individuals, who thereby had claims against the debtor.  The debtor and its insurers settled those claims pursuant to agreements that provided for the injured claimants and the debtor to pursue third parties also responsible for the losses and for any recoveries to be paid to the insurers to the extent of their payments under the policies.  At the time of the bankruptcy filing, the recovered funds were in trust accounts or the registry of a court.

The debtor asserted that the funds were property of the estate to the exclusion of the insurers.  The court agreed that the funds were property of the estate, but it ruled that the debtor held the funds in trust for the insurers.  As the equitable owners of the funds, the court concluded, the insurers were entitled to them under 11 U.S.C. § 541(d).[28]

---

[28] Section 541(d) provides in pertinent part:
> "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . . becomes property of the estate . . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

14

*Kaiser* is a rather straightforward application of contract and trust law in the context of a property of the estate issue under § 541(d) and an agreement that implemented the subrogation rights of the insurers. As applicable here, it stands for nothing more than the proposition that National Union is the equitable owner of any claim Fairbanks has against Liberty Mutual to recover the Excess Amount from Liberty Mutual and the proceeds of any such claim. The key distinctions are that, unlike the situation here, proceeds from the subrogated claims had *already been collected* from third parties responsible for the losses and were in *segregated accounts*.

*Kaiser Aluminum* teaches that, if Fairbanks or National Union had recovered from Liberty Mutual on the subrogated claim at the time Fairbanks filed its chapter 11 case, any identifiable proceeds from the claim would belong to National Union. That does not translate into a conclusion that National Union is entitled to an affirmative recovery against Fairbanks because it has subrogation rights in a claim against Liberty Mutual.

Assuming, without deciding, that Liberty Mutual is the equitable owner of the claim against Liberty Mutual,[29] the Court sees no basis for turning National Union's subrogation rights to that claim into an affirmative claim against Fairbanks. *If* Fairbanks has such a claim against Liberty Mutual, *if* the proposed settlement with Liberty Mutual, a potential chapter 11 plan, or both preclude National Union's assertion of it by subrogation, and *if* National Union is entitled to a remedy for any resulting loss of its subrogation claim, National Union may assert whatever rights it has.

---

[29] To be clear, nothing in this Order, which is for purposes of claims allowance only, affects any of National Union's subrogation rights, and claims against Liberty Mutual, any rights it has to object to the proposed settlement or to a proposed plan if either or both violate its rights, or any rights it has as the result of any loss of its subrogation rights.

15

But those issues are not before the Court at this time. No one has asked the Court to approve the Liberty Mutual settlement, and Fairbanks has not proposed a plan. If the bankruptcy process adversely affects National Union's subrogation rights, then whether it has a remedy and, if so, what the remedy is, will be bankruptcy law questions. The potential property of the estate and plan issues that National Union raises do not provide a basis for altering the rights and duties of Fairbanks and National Union under the policies as a matter of Georgia law. National Union's remedies do not include the creation of a remedy that does not exist under the policies or Georgia law and that is fundamentally at odds with the very purpose of the policies.

Because nothing has affected National Union's subrogation rights at this time, National Union is not entitled to a reimbursement claim at this point for a related reason: it has not yet suffered any loss.

Moreover, at this point the Court has no basis for determining that National Union will suffer any loss if the Liberty Mutual settlement and a plan in this case affect the subrogation claim as National Union may fear. National Union can have a loss only if Fairbanks has a meritorious claim against Liberty Mutual. Liberty Mutual disputes it.[30]

The Court cannot simply assume for the purpose of claim allowance that Fairbanks will prevail on a claim against Liberty Mutual. The record before the Court establishes only that National Union paid more than its share and its conclusion that Liberty Mutual is liable to Fairbanks for the Excess Amount. The Court will not speculate on the merits of the claim when the parties have not addressed it and the issue is not before the Court. In any event, the Court can not allow a reimbursement claim because of the subrogated claim against Liberty Mutual based on speculation.

---

[30] (Tr. 96, at 24 to 97, at 24).

16

The Court concludes, therefore, that National Union is not entitled to reimbursement of overpayments and defense costs based on any subrogation rights it has.

**C. Recovery of Deductibles**

The policies expressly provide that National Union may recover from Fairbanks any indemnity payments that it makes that are subject to the $5,000 deductible on each claim for which Fairbanks is responsible.[31] Fairbanks contends that, because the liability of National Union under the policies is based on a pro rata calculation, the deductible amount on each claim should also be pro-rated.[32]

Fairbanks relies on *Clemtex, Inc. v. Southeastern Fidelity Insurance Co.,* 807 F.2d 1271 (5th Cir. 1987). There, the Fifth Circuit determined, as a matter of Texas law, that the policy provisions with regard to pro-ration of the deductible when the pro rata approach governed the insurer's share of liability were ambiguous and remanded to the district court to consider the issue. *Id.* at 1277-79. Neither party has asserted any other authority.

In the Coverage Action, Judge Koeltl determined the plain language of the policies calls for pro rata allocation of liability.[33] The basis for this conclusion is that the policies cover injuries that occur during the periods the policies are in effect.

The plain language of the policies similarly governs the deductible issue. National Union's obligation under the deductible provisions is for damages in excess of the $ 5,000 deductible amount.[34] The $ 5,000 deductible applies to each claim for injury. It follows, therefore, that the full deductible amount applies to each claim.

---

[31] Ex. 1 [Doc. No. 532-1] at 18, ¶ 4; Ex. 2 [Doc. No. 532-2] at 17, ¶ 4.
[32] Fairbanks Brief at 24-26.
[33] 170 F. Supp. 3d 634, 651 (E.D.N.Y. 2016).
[34] Ex. 1 [Doc. No. 532-1] at 18, ¶ 1; Ex. 2 [Doc. No. 532-2] at 17, ¶ 1.

National Union cannot recover all of the payments subject to the deductible amount, however. As Fairbanks correctly points out, the six-year statute of limitations in O.C.G.A. § 9-3-24 applicable to actions on a written contract applies to preclude any claim for deductibles paid before July 30, 2012.[35]

At the hearing, the Court determined that it would decide the issues that govern allowance of National Union's claim and defer calculation of the amount due based on those rulings for a further hearing in the expectation that the parties could calculate the proper amount of the allowed claim in accordance with those determinations. (Tr. 99, at 18 to 100, at 2). Accordingly, the Court directs counsel for National Union and Fairbanks to confer and, within 30 days from the date of entry of this Order, file with the Court a report that either (1) stipulates the amount of deductibles for which Fairbanks is liable or (2) states the contentions of each party as to the proper amount and the basis for the disputes that the Court must resolve. If the parties do not agree, the Court will schedule a status conference to discuss procedures for, and scheduling of, a further hearing to resolve the dispute.

The Court will defer entry of a final order with regard to allowance of National Union's claim pending resolution of the amount of deductibles for which Fairbanks is liable.

### [End of Order]

**This Order has not been prepared for publication and is not intended for publication.**

Distribution List

Paul M. Singer
Andrew Muha
Luke Sizemore
Reed Smith, LLP
225 Fifth Avenue, Suite 200
Pittsburgh, PA  15222

David Christian
David Christian Attorneys, LLC
105 W. Madison St., 14th Floor
Chicago, IL. 60602

---

[35] The date is six years before the filing of Fairbanks's chapter 11 case. See 11 U.S.C. § 108(c).